## Jacobs's Trust Estate.

Argued January 9, 1936.  Before SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*William A. Gray,* for appellants.

*John Wintersteen,* of *Wintersteen, McCoy & Wintersteen,* for appellee.

OPINION BY MR. JUSTICE DREW, January 31, 1936:

By deed of trust dated November 4, 1926, John Jacobs transferred to the Girard Trust Company various securities having a face value of nearly $800,000, in trust to pay the income to his wife for life, and upon her death to himself for life, and upon the death of the survivor of them to his living children for life. Further provisions were made regarding the distribution of the principal upon the death of the children. It was stipulated in the deed that "during the lifetime of grantor all investments and reinvestments shall be made in accordance with his instructions." Nothing in this deed required those instructions to be in writing, although this method was followed in most cases. By a collateral writing, settlor's wife was given authority to direct investments in the trust.

Upon the settlor's becoming dissatisfied with the administration of the trust, an account was filed by the trustee, to which exception was taken by the settlor, his wife, and a guardian ad litem of their minor children. It was alleged (1) that the trustee without authority invested trust funds in certain bonds and partial mort-

gages and (2) the trustee's negligence resulted in the trust account being charged with taxes and penalties totaling $15,435.91. The auditing judge found that the settlor, though not expressly approving in advance, had subsequently approved all but two of the partial mortgages (in amounts of $100 and $1,000 respectively). He accordingly surcharged the trustee for those two, and dismissed the exceptions as to the remaining mortgages, on the ground that, having been approved, they were within the terms of the deed of trust. The exceptions relating to bonds and to the payment of taxes and penalties were likewise dismissed. The decree of the auditing judge was made absolute by the court in banc, and the present appeal followed.

It is admitted on behalf of the trust company that the partial mortgages in question were purchased for the trust account between June, 1927, and December, 1929, without advance authorization from the settlor, but it is contended that the latter's subsequent knowledge and failure to object to their purchase constituted an approval of the investment. Settlor denies any knowledge of the partial mortgages before 1933. On September 30, 1929, according to the testimony, settlor and a trust officer of the company went over the assets of the trust, in which were included the partial mortgage investments, with a view to the selection of certain bonds which the settlor wished to sell, and the substitution therefor, as an investment of the estate, of his own demand note. At that time, it was testified, the settlor's attention was called to the fact that the mortgages could be reduced to cash if he wanted them so reduced. He then stated he did not want cash, but wanted to use the bonds for collateral. Settlor admits the conference, but when asked "At that time did you look over the assets in the estate?" his answer was "Not particularly, no." At that conference he selected, and withdrew from the trust, securities which made up nearly one half of the trust fund. The record discloses that the selection he made of securities

for withdrawal could not have been made without a particular examination of the list of assets. The auditing judge concluded that the settlor's testimony on this point "lacked frankness and was evasive," and found that the purchase of these mortgages was approved by him. We see no abuse of discretion on the part of the auditing judge in this respect. The investment was approved by the settlor and was therefore within the terms of the deed of trust. The fact that the approval was subsequent to the investment is of no consequence.

With regard to the bonds, it is complained that the assets of the trust should include Suburban Company 1st 6s of the face value of $50,000, whereas in fact the only Suburban Company bonds disclosed by the account are general convertible 6s of that face value. On October 16, 1931, a trust officer of the company prepared, and the settlor signed, the following order: "Girard Trust Company: I have bought from [broker] for [trust account—John Jacobs] 50,000 Suburban Co. 1st 6s at 75 and in making settlement for same, charge to said account, any accrued interest to be charged against income." The other two phrases on the printed form— "Please Buy," "I approve of buying,"—were crossed out. The plain meaning of this document is that settlor informed the trustee he had bought certain bonds and requested the latter to make settlement by charging the trust account for the purchase price. The essence of the transaction was that the settlor ordered certain bonds which the trustee accepted and placed in the trust. The purchase was handled by the settlor, and the trustee's function was simply to receive the bonds and settle for them. It is urged that, since the body of the order calling for 1st 6s is in the handwriting of the trust officer, the trustee was negligent in not receiving bonds of that description. But this overlooks the fact that it was the settlor who told the trust officer what he had bought, and any error in the description was his, not the trustee's; the latter merely settled for that which the settlor

had himself purchased. As a matter of fact, settlor registered no objection to the bonds until early in 1934, although in 1932 or early 1933 he became a member of the bondholders' protective committee, in which position he must have gained knowledge of the lien position of the bonds. The auditing judge was of the opinion that the settlor knew more about these bonds than he was willing to admit. We find no error in the disposition of this exception.

Objection is next made to payment by the trustee of $15,435.91 for taxes, water rent and penalties for the years 1929 to 1932 inclusive, on the premises at 1929 Chestnut Street, on which property the trustee held a ground rent. The settlor admits approving the original investment therein. The trustee collected the interest on the ground rent to August, 1931. Upon subsequent default, foreclosure proceedings were commenced in January, 1932, and title was acquired by the trustee in September, 1932, at which time the trustee was compelled to pay the taxes and penalties mentioned. It is contended that the trustee should have taken immediate steps, other than the writing of letters to the owner, to enforce payment of the taxes which were not paid in 1929 or thereafter. No legal remedy is indicated, however, to accomplish this prior to default in the interest. The case of Presbyterian Ministers' Fund v. Folz, 41 Pa. Superior Ct. 303, is cited as authority for the proposition that the former owner was liable for taxes paid after foreclosure, but it is not shown that in the instant case a judgment against the latter could have been collected. The trustee is not now without this remedy if it be feasible to pursue it. Under the circumstances, it was within the trustee's discretion to determine whether or not to take steps to enforce the obligation to pay taxes. The court was clearly right in finding the trustee not negligent in its conduct of the matter. The argument is made that the trustee tacitly admitted its liability for the taxes and penalties by allowing the estate credit for

the amount thereof. However, the amount was subsequently charged by the trustee against the principal of the estate. The auditing judge summarized the transaction thus: "These [taxes and penalties] were first charged to income and afterwards transferred to principal where they properly belonged." This statement is supported by settlor's testimony that the crediting of the taxes and penalties to the estate was "as per our agreement with [the trust officer] that he would not charge them against the *income* of the deed of trust," and further, that the trust officer arranged that "the trust company pay the taxes and *carry* it." There is no evidence to indicate that the trustee agreed to be ultimately liable for the amount thus paid out in the estate's behalf.

Whether or not the trustee should be surcharged with regard to the investments here complained of depends principally upon the weight to be given the conflicting testimony of witnesses whom the auditing judge saw and heard. In such a case it is particularly true that the findings of an auditing judge have the effect of a jury's verdict and will not be reversed when supported by evidence or reasonable inferences therefrom: Boyd's Est., 315 Pa. 283. The evidence here is undoubtedly sufficient to support the findings of the auditing judge and his disposition of the case. It is clear from the record that this is but another attempt to shift to the trustee a loss which is solely due to the economic conditions of the times. The settlor was obviously a man of considerable business experience, and he was apparently quite active in his supervision of the administration of the trust. The court below was amply justified in finding that he was aware of the investments in question. He did not object until the value of the investments declined along with all other values. Under the circumstances, he may not now place upon the trustee the loss that has resulted therefrom.

Decree affirmed at appellants' cost.