## Lieber's Estate

Before Van Dusen, P. J., and Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Ralph S. Croskey*, for exceptant.

*Thomas Stokes*, contra.

BOLGER, J., November 8, 1940.—These exceptions relate to the refusal of the auditing judge to direct the accountant to substitute cash for certain investments made by it allegedly in violation of the provisions of decedent's will. By the thirteenth paragraph thereof, testator gave one third of the residue of his estate to the accountant—

". . . In trust, to hold, manage, invest and reinvest the same and to keep the same invested, to collect the income therefrom and to pay the net income thereof unto Genevra N. Lieber, widow of my son, William A. Lieber, to be used as she may deem best for the benefit of her son, Francis Lieber, until he shall attain the age of thirty (30) years, and the said Trustee is authorized, *with the consent of the said Genevra N. Lieber first obtained, but not otherwise,* to call in, change and alter investments so

delivered to it as Trustee as aforesaid and also investments thereafter made.

"When the said Francis Lieber shall attain the age of thirty (30) years said Trustee shall set over, assign, convey, transfer and deliver said part unto him in absolute estate and in fee simple according to the nature of the property." (Italics supplied.)

The auditing judge held that the above provisions of the trust contemplated and required the approval of Genevra Lieber "in all investment activities", and, further held that "no consent was obtained from the mother as required by the will", although it was argued that the written approval of the mother dated October 23, 1925, to the retention by the accountant of certain securities and the sale of others was a sufficient compliance with this requirement of the will.

With these findings we are in accord—indeed, no exception has been taken thereto by the accountant. Our review is, therefore, confined to the question whether the actions of the mother and of the son amount to an implied ratification and approval of such investments, thus estopping the beneficiary from raising such question.

The investments complained of were made over a period of four years, from 1927 to 1931. Quarterly statements showing the purchase of each and every investment were mailed to the mother and the income therefrom was regularly remitted. The cestui que trust arrived at full age in the year 1930 and it was agreed on the record by counsel that his first objection was not made until June of 1936. It will thus be seen that almost 10 years elapsed from the time of the first investment to the time when objection was made.

It cannot be said that either the mother or the son was ignorant of their rights; indeed, shortly after the securities were turned over to the trustee the mother notified the trustee by letter dated October 19, 1925, as follows:

". . . I have decided not to give my consent to the sale of any of the said securities, and in view of the fact that no changes in the securities received by you from the executors of the will of Genevra Lieber can, *under the terms of his will, be made unless I approve, I understand that none of the securities will be sold but will be retained by you as Trustee, unless I at some future time approve of the conversion of any of them and the investment in others.*" (Italics supplied.)

Four days later, on October 23rd, Genevra Lieber did give such consent to the retention of certain securities and the sale of others. Hence, it will be seen that the mother was thoroughly conversant with the terms of the will and alert in the assertion of her rights and those of her then minor son.

It also appears that the son lived with the mother until his marriage in 1935, which was five years after he reached his maturity; that he saw the quarterly statements sent to the mother, often checked the figures with the amount of the checks, some of which were endorsed directly over to him. In all this time neither he nor his mother raised any objection whatsoever.

On October 20, 1927, the company wrote to Mrs. Lieber notifying her that it had accepted, subject to her approval, a part interest of $3,275 in a mortgage of $80,000 on premises 145-147 North Seventh Street and 630-632-34 Race Street, stating that the properties were assessed for taxation for the year 1927 at $102,500 and had been valued by the company's appraiser at $158,500 and requesting "if this investment meets with your approval, will you kindly sign and return to us the enclosed carbon copy of this letter."

Such approval was not returned, either through neglect, or by design of the mother calculated to place the trustee in an equivocal position by exposing it to criticism at a future date no matter what action it took. This failure by the mother to reply constituted an abdication of her prerogative under the will. It is argued that because

the trustee failed to procure such written approval in advance of the investment it should be stricken down. However, the auditing judge has found as a fact that the subsequent actions of the mother and son were tantamount to an express approval and in this finding he is supported by Jacobs' Trust Estate, 320 Pa. 539, wherein Mr. Justice Drew, at page 542, states: "The fact that the approval was subsequent to the investment is of no consequence."

To the same effect is Towne's Estate, 25 D. & C. 641, where the relative position of the parties is much the same as in the case now before us. Therein it was held:

"A corporate trustee will not be surcharged for an investment of trust funds in certain securities without the consent of its cotrustee, who is the husband of the cestui que trust, where for a period of 6½ years thereafter no objection was made by the cotrustee or by the cestui que trust, although they received quarterly statements showing the nature of the investments . . .".

In the latter case, the court in refusing a surcharge invoked the principle of ratification, as in the instant case, in the following language (p. 647):

"The course of conduct followed by both Mr. Vail and his wife constituted acquiescence and ratification. The investments made by the Fidelity-Philadelphia Trust Company without Mr. Vail's approval were not void, they were voidable, and unless he or the beneficiary undertook to disaffirm within a reasonable time they are precluded from now doing so. No less is the course of conduct pursued by them such as to preclude their receiving relief from this court. They permitted a long period of time to elapse during which the investments could have been removed from the account. They received the benefits of them, and then, when a partial default occurred, asked that the cotrustee assume the whole burden.

"Under principles of equity too familiar to require quotation both the cotrustee and the beneficiary appear not entitled to the relief asked by them."

In Macfarlane's Estate, 317 Pa. 377, it was held:

"A competent beneficiary who, with full knowledge of the facts and of his rights, expressly consents to or affirms an investment by the trustee cannot, in the absence of fraud, thereafter question its propriety."

The exceptions are dismissed and the adjudication confirmed absolutely.