Commonwealth ex rel. Harry, Appellant, v. Eastridge.

Argued April 17, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

Appeal, No. 138,  reargument refused June 29, 1953.

*Paul A. McGinley,* with him *James Hemsteet,* for appellant.

*Francis H. S. Ede,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 27, 1953:

Marie A. Harry, relatrix, appeals from an order of the Superior Court reversing the Court of Common Pleas of Northampton County and awarding custody of her minor children, Kathleen Marie Harry and Patricia

Ann Harry, to the respondents, Mr. and Mrs. Spencer Eastridge.

The history of this litigation begins with the filing of a petition for adoption of these children by Mr. and Mrs. Eastridge in the Orphans' Court of Lackawanna County. The petitioners in that proceeding predicated their right to adopt upon the fact of abandonment by the natural mother for the six-month period required by the Act of April 4, 1925, P. L. 127, as last amended by the Act of June 30, 1947, P. L. 1180, 1 PS 1 et seq. Hence, the maternal interest of relatrix in her children was directly in issue then as it is in the present application. A full hearing was held before Judge BRADY, and he characterized the proceedings before him in these words: "Considerable testimony was taken in these cases and the record contains charges and counter-charges, allegations and denials. . ." After careful reflection on the credibility of the witnesses who made these contradictory statements before him, the learned orphans' court judge denied the petition for lack of proof of abandonment.

Upon the filing of the present petition for habeas corpus, it was agreed by counsel for both sides that the testimony taken in the orphans' court be made part of the record in the court of common pleas. However, the relatrix and both respondents personally appeared before Judge WOODRING to supplement what they had said in the orphans' court. Later, upon petition of respondents, a further hearing was held directed solely to the question of the fitness of the relatrix as a mother. After consideration of the testimony taken at all three hearings, the Northampton County court awarded custody to the relatrix.

There is no dispute over the legal principles involved. The controlling consideration is the welfare of the child: *Commonwealth ex rel. Graham v. Graham,*

367 Pa. 553, 560, 80 A. 2d 829; *Commonwealth ex rel.
Levinson v. Levinson,* 162 Pa. Superior Ct. 563, 59 A.
2d 625; *Commonwealth ex rel. Barnett v. Currie,* 165
Pa. Superior Ct. 477, 69 A. 2d 154. It is presumed to
be for the best interest of the child to be in the custody
of its natural protector, its parents, and particularly
the mother in the case of young children. Compelling
reasons must appear before a natural parent will be
deprived of custody: *Commonwealth ex rel. Keenan v.
Thomas,* 151 Pa. Superior Ct. 131, 30 A. 2d 246; *Commonwealth ex rel. Minnick v. Wilson,* 159 Pa. Superior
Ct. 230, 48 A. 2d 27; *Commonwealth ex rel. Williams
v. Price,* 167 Pa. Superior Ct. 57, 59, 74 A. 2d 668.

Decision of the present case according to these principles depended largely upon a determination of the
credibility of witnesses. There was testimony, ample
if believed, to support a finding that relatrix was unfit to have custody: testimony that she abused her children, used profanity toward them, fed and clothed them
insufficiently, failed to keep them and the house in
which they lived clean and tidy, that she desired to be
relieved of the care of the children when she and her
husband separated and was not particularly concerned
about who should have custody. There was also testimony from which an inference could be drawn that she
failed to observe the proprieties in her conduct with
the young man with whom she kept company after divorcing her husband. This is the testimony which the
Superior Court chose to believe and which formed the
basis of its opinion.

But in so doing that Court rejected the unqualified
*denial* by relatrix, which was believed by the judges
who saw her in the courts below, that she was guilty
of such conduct and the corroboratory testimony of
witnesses produced by her who said that she was a
devoted mother, took proper care of her children and

household, evidenced concern for their well-being and desired to visit them even when she was forced to surrender them to the custody of others at the time when her own home was broken up because of the dissolution of her marriage with the children's father. In drawing the inference of improper conduct, the Superior Court was required to disbelieve the testimony of the young man's mother that she was always present in the house when relatrix spent the night there, that she and her husband occupied the middle bedroom of the three in their home, that she always awoke and greeted her son and the relatrix and saw them proceed separately, one to the front and the other to the back bedroom, to retire.

. The Superior Court's decision was thus based on a categorical rejection of the conclusions on credibility reached by the two hearing judges who observed the witnesses and listened to their testimony. Judge WOODRING, before whom the parties appeared twice, had said: "Under all the evidence in the case, we cannot doubt relatrix' sincerity in desiring to properly rear her children. Nor, can we find any compelling reason why this mother should not have custody of these daughters of tender years. While the living conditions with relatrix' sister might not be ideal, there can be no doubt that the home is adequate and comfortable for the children. . . .

"A full hearing was had on this question [relatrix's unfitness] and upon consideration thereof it was our opinion that the testimony fails to make out a case of suspicion, and certainly fails to establish any facts from which the court could determine the unfitness of relatrix." Judge BRADY, after seeing relatrix at the adoption hearing, was of the same mind: ". . . while we cannot say that she is a model or pattern of excellence in the performance of her motherly duties we

cannot find that she is an unfit mother to have the care and custody of her minor children, and particularly in view of the mitigating circumstances caused by her emotional disturbances resulting from the evident strained relations existing between herself and her husband."

Appeals to the Superior Court in proceedings for the custody of children are governed by the Act of July 11, 1917, P. L. 817, sec. 1, 12 PS 1874, which provides that the Court ". . . shall consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong." The scope of review is thus considerably broader than in adoption cases, which come before an appellate court as on certiorari: *Helen Frances Young's Adoption*, 259 Pa. 573, 103 A. 344; *Davies Adoption Case*, 353 Pa. 579, 46 A. 2d 252; *Susko Adoption Case*, 363 Pa. 78, 69 A. 2d 132.

But this broader power of review was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear: *Jacobs's Trust Estate*, 320 Pa. 539, 544, 183 A. 49; *Harbison Estate*, 365 Pa. 468, 473, 76 A. 2d 187. In *Oelberman Adoption Case*, 167 Pa. Superior Ct. 407, 74 A. 2d 790, the court passed on adoption and custody petitions in one proceeding and, after alluding to the differences in the scope of review on the two appeals, said through President Judge RHODES (p. 416) : "We are not unmindful that the court below had the opportunity of seeing and hearing the witnesses in this case. We also

recognize that weight is to be given to the fact that the parties were known to the lower court, and that it has had a better opportunity to pass upon their ability and character than we have. Com. ex rel. Knouse v. Knouse, 146 Pa. Superior Ct. 396, 398, 399, 22 A. 2d 618." The Superior Court failed to give such weight to the opinions of the two judges who heard the witnesses in the present case.

The order of the Superior Court is reversed, and the order of the Court of Common Pleas of Northampton County is reinstated.

DISSENTING OPINION BY MR. JUSTICE BELL:

In *Com. ex rel. Graham v. Graham*, 367 Pa. 553, 80 A. 2d 829, a majority of this Court, over my vigorous protest, awarded the custody of a child of 4½ years of age to a *great*-grandfather 78 years of age who was living on relief and who had nothing but a three room house with no water, heat or light and no bathroom, in preference to the child's mother, who had been a trained nurse, but partially blind.

It is some satisfaction to find that this Court has now recognized that a mother is best qualified to have the custody of a child of tender years because nothing can take the place of a real mother's love. However, that satisfaction is tempered by the fact that the Court has extended the benefits of Motherhood to one who does not possess the qualities and attributes invariably associated with that revered name.

Where, as in the instant case, a mother takes little interest in the care and rearing of her children, and fails to properly feed or clothe or care for them; and where she works during the day and rarely ever stays

home to look after the children at night, she no longer deserves the precious name of Mother or the custody of her children in preference to foster parents who are devoted and exceptionally well qualified to bring up the children.

The parents asked the respondents to take their children and the testimony established that the respondents took the children with the understanding that they were to be later adopted. They had the children in their home for five months before this issue arose.

The Superior Court agreed with the father of the children and with other witnesses and found that the mother had neglected the children, that (according to their father and the medical testimony) they were ill fed, at times abused, and generally speaking not given proper care by their Mother; and that the Mother's home or proposed home is "inadequate and relatively unsatisfactory;" and that it was for the best interest and welfare of the children that they should continue to live with their foster parents.

Under such circumstances it is, in my judgment, unquestionably for the best interest and welfare of the children, as the Superior Court found, that their custody be awarded to devoted foster parents instead of to a mother who prefers to work during the day and lead a free and unrestrained life at night rather than give her children the love, attention and care to which they are entitled.

I would affirm this case on the very able opinion of President Judge RHODES speaking for a unanimous Superior Court.