Albee Appeal.

Argued March 19, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Herbert Somerson,* for appellants.

*Walter Stein,* with him *Berger, Stein & Kline,* for appellee.

Opinion by Ervin, J., April 16, 1959:

On November 25, 1955 Walter F. Albee and Dorothy M. Albee filed a petition for the adoption of Thomas E. Neff, who was born on October 27, 1955. The child Thomas was born out of wedlock. His mother, Marianne Neff, is a citizen of Germany and his putative father is John D. Albee, brother of Walter F. Albee, one of the petitioners. The petition averred that the child was given into the custody of the petitioners on November 23, 1955 by Marianne Neff, the natural mother. The petitioners are Lutheran and the natural mother is a Roman Catholic. Consents of John D. Albee, putative father, and of Marianne Neff, the natural mother, were attached to the petition. At the hearing it developed that Marianne Neff was in this country on a visitor's visa which was about to expire December 7, 1955 and that she returned to Germany shortly before the expiration of the visa. It also developed that shortly after her return to Germany she communicated with Mrs. Albee and asked her to "Give me my baby back." Mrs. Albee replied "I will do it." Mrs. Albee also testified that she would hand the child to the mother if she wanted to have it in her own home and bring the child up as her own. At the hearing the attorney for Mrs. Albee, Herbert Somerson, said: "She can come over and get the baby." Mr. Albee testified as follows: "Q. Is it your understanding, Mr. Albee, if Marianna comes here for the child, that the child will be turned over to her? A. If she displays that intent to raise the child herself." Of course, Mr. Albee expressed the desire to have the child stay with them. Marianne Neff, the mother, was represented at the hearing by counsel, Walter Stein, but she did not ap-

pear in person because of her absence in Germany. Mr. Stein had been retained as counsel on her behalf by the German Consulate in pursuance of a letter which the mother had written to the Consul asking for assistance in securing the return of her child. On October 6, 1958, more than three years after the filing of the petition for adoption, the attorney for the Albees moved for a continuance of the hearing on the ground that the natural mother was not present. The court refused the motion, counsel for the natural mother having objected to the continuance. Mrs. Albee then gave some testimony in which she admitted that she had corresponded with the child's mother and that she was agreeable to turning the child over to the mother if she was in fact ready to take the child in her own home and raise it. The court then dismissed the adoption petition "without prejudice."

We see no abuse of discretion in the dismissal of the adoption proceeding. Under the Act of April 4, 1925, P. L. 127, 1 PS §3, it is provided: "At said hearing . . . all the persons whose consent is necessary hereunder must appear in person and be examined under oath by such court or judge, but the personal appearance of . . . persons whose consent is necessary hereunder may be dispensed with in the discretion of the court . . . if such persons reside without the jurisdiction of the court, or if for any other reason the said court or judge deem it unnecessary, provided the duly executed consents of such persons in writing have been filed with the petition. . . ." The purpose of this statutory provision is to make certain that the consent is still valid. In *Susko Adoption Case,* 363 Pa. 78, 83, 69 A. 2d 132, it is said: "Section 3 of the Act gives the trial judge discretion to require the presence of the natural parent or parents *at the hearing* on the petition for adoption where a formal consent has been exe-

cuted. This implies that it is not too late even then to withdraw a previously given consent for adoption. If there is no voluntary consent at that time, the requirements of the Adoption Act have not been met." See also *Ashton Adoption Case,* 374 Pa. 185, 198, 199, 200, 97 A. 2d 368. It having been made clear to the court that the mother's consent to the adoption had been withdrawn, it was entirely proper for the court to dismiss the petition for adoption. A reference to the petition for adoption will reveal that it did not contain an averment of abandonment and therefore this issue was not and could not have been before the court in the present state of the pleadings.

On June 17, 1958 it was stipulated of record by counsel for the respective parties "that in addition to the disposition of the issue raised by the adoption petition, the court will also dispose of the issue of custody of the child involved in the adoption proceeding." Treating the matter as a custody proceeding, the court below, after hearing, awarded custody of the child to the natural mother and directed "that the child be turned over to counsel of record, Mr. Stein, who will in due course return the child to the mother personally."

In a custody case the controlling consideration is the welfare of the child: *Com. ex rel. Harry v. Eastridge,* 374 Pa. 172, 174, 97 A. 2d 350. It is presumed to be for the best interest of a child of tender age to be in the custody of its natural mother: *Com. ex rel. Keenan v. Thomas,* 151 Pa. Superior Ct. 131, 30 A. 2d 246; *Com. ex rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 59, 74 A. 2d 668. In the absence of compelling reasons, the welfare of children of tender age is best promoted by giving custody to the mother: *Com. ex rel. Blatt v. Blatt,* 168 Pa. Superior Ct. 427, 79 A. 2d 126. In *Com. ex rel. McMenamin v. McMenamin,* 171

Pa. Superior Ct. 524, 526, 90 A. 2d 398, we said: "No compelling reasons are exhibited by this record why the usual rule should not have been applied; namely, that children of tender years be awarded to the custody of their mother. We are convinced that the best interests and welfare of this child will be best served by maternal care and affection, no compelling reasons appearing to the contrary." See also *Urbani v. Bates,* 395 Pa. 187, 149 A. 2d 644. The rule is not otherwise with respect to illegitimate children. In *Com. ex rel. Minnick v. Wilson,* 159 Pa. Superior Ct. 230, 232, 48 A. 2d 27, we said: "As stated by HIRT, J., in Latney's Appeal, 146 Pa. Superior Ct. 20, 21 A. 2d 429, at page 21, '. . . the general rule has been that the right of a mother to the custody of an illegitimate child, is superior to that of all other persons for, ordinarily, the best interests of the child can be served by maternal care.' " In the present case we have examined the record carefully and there is no compelling reason why the natural mother should not have the custody of her child. There is not a scintilla of evidence in the record to show that she is unfit. On the contrary, the Albees have inferentially conceded her fitness by the assertion of their willingness to turn the child over to her if she intended to raise it in her own household.

Appellants also complain that the court had no right to consider the official report from Munich showing the fitness of the natural mother and her present husband to have the child. It is true that in *Com. ex rel. Mark v. Mark,* 115 Pa. Superior Ct. 181, 175 A. 289, and also in *Com. ex rel. Ritter v. Ritter,* 91 Pa. Superior Ct. 563, we did say that the court should not base its decision upon information derived from court interviewers and probation officers where the right to cross-examine them was not afforded at the hearing. In the

present case there was sufficient evidence to justify the court's award of the child to the natural mother even though this report had never been introduced. There was nothing in the record to show that the mother was in any way unfit to have the custody of her child and in the absence of such showing the law presumes that the welfare of a child of tender age is best promoted by giving custody to the mother.

Order dismissing petition for adoption affirmed. Order awarding custody affirmed.

---

DISSENTING OPINION BY WRIGHT, J.:

I am compelled to dissent from the majority decision. Rarely has a record come before this Court so devoid of competent material evidence. Indeed, it appears that much of the hearing was conducted in socalled off-record discussions. The translation of a letter purported to have been sent by the natural mother to her attorney has been included in the printed record, although it was not received in evidence and was, in fact, withdrawn by the natural mother's attorney. Of greater consequence is the fact that the court admitted into evidence the translation of the ex parte report of a social worker in Munich. This practice has been condemned by this Court in *Commonwealth ex rel. Mark v. Mark,* 115 Pa. Superior Ct. 181, 175 A. 289. See also *Commonwealth ex rel. Oncay v. Oncay,* 153 Pa. Superior Ct. 569, 34 A. 2d 839, in which it was stated: "We must point out again, however, that reports of investigators, agents, and doctors cannot be received in evidence, or considered by the court, in a contested case." Stripped of the letter and the report just mentioned, the record contains no evidence whatever concerning the fitness or qualifications of the mother, the suitability of the home in Germany,

or the attitude of the mother's present husband. It is my view that the court below did not have before. it sufficient evidence to justify its conclusion that it was in the best interests of this young boy to tear him from the only home he has ever known and direct that he be transported thousands of miles outside the jurisdiction and given to a mother who did not appear before the Court and who, as a practical matter, is a complete stranger in a foreign land.