## Snyder Adoption Case.

Argued March 16, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Nathan Routman,* with him *Harvey E. Moore,* and *Routman, Moore & Goldstone,* for appellant.

*Albert E. Acker,* with him *John J. Regule,* and *Wiesen, Cusick, Madden, Joyce, Acker and McKay,* for appellees.

OPINION BY MR. JUSTICE BOK, April 17, 1961:

This is an adoption case. The subject of it is Dale Lee Snyder, age nine years and nine months when the petition to adopt him was filed by his widowed stepmother in Mercer County on July 26, 1960. There is an answer to the petition filed by Mr. and Mrs. John D. Beach, who live in Ohio, she a half-sister to Dale; it alleges their willingness to adopt the boy and challenges the petitioner's fitness.

After hearing on this petition and answer, the court below awarded Dale to the Beaches, and the petitioner has appealed. We think the court was in error.

The ward's mother died in giving birth to him, and his father, who then married the petitioner, died in 1960. Together they had brought up Dale until the father's death. Petitioner, as stepmother, had thus taken care of the boy for over eight years and can therefore be considered to have custody of him. The case presents no problem of abandonment or consent under the Adoption Act of July 2, 1941, P.L. 229, 1 PS §2, as amended. Our concern is directly with the best interests and welfare of the ward, and we must consider the case on its merits: *Dougherty Adoption Case,* 358 Pa. 620 (1948), 58 A. 2d 77; *Noone Adoption Case,* 376 Pa. 437 (1954), 103 A. 2d 729; *Cochran Appeal,* 394 Pa. 162 (1958), 145 A. 2d 857; *Shoemaker Appeal,* 396 Pa. 378 (1959), 152 A. 2d 666. Indeed the Adoption Act, as amended by the Act of June 30, 1947, P.L. 1180, §3, and of August 26, 1953, P.L. 1411, §5, 1 PS §4, requires that the court be satisfied that the welfare of the person to be adopted will be promoted.

We are constrained to observe—en passant, since we shall direct that the boy remain with the petitioner—that the award by the court below to the Beaches was unsupported by any petition, and we are unwilling to accept as one the statement in an answer that the affiant is willing to adopt but cannot do so without custody.

Even if we were to concern ourselves primarily with the fitness of the parties, we would not decide the case on the basis of such a choice. Both sides are respectable people and seem reasonably fit as one reads this ample record, which we have done with care. The boy's mother would have been his stepmother's age had she lived, fifty-one. The Beaches are twenty-nine and thirty. There are no children in the petitioner's home, while the Beaches have four daughters. Both households are financially able to care properly for Dale. Both like him and conscientiously want him. Both women are social drinkers, and an effort to make the petitioner appear worse came to nothing: Dale's father drank to excess and petitioner had such a hard time with him that she considered divorcing him, and she was seen only a few times, with him, in the taverns. Both parties keep nice homes. The Beaches tried to make Dale appear as over-obedient, shy, too well-mannered, frightened, and very thin. But his father was extremely thin and was also very strict with him, so the effort to make the petitioner appear as a martinet is not convincing.

It is useless to labor the evidence for and against the myriad points made along these lines, for the crucial test is rather obviously whether it is a good thing to change this boy's life as radically as the action of the court below requires. We think that the negative answer stares squarely at us from the record.

The boy himself told the court in chambers that he wanted to remain with his stepmother. He lost his own mother at birth and hence never knew her: the petitioner represents the idea of mother to him, perhaps

the more so for his knowing that she has cared for him and wants him when she need not. His father's death must have been a mixed emotional shock to him, compounded of memories of strictness and drunkenness, on the one hand, and of losing his only remaining parent, on the other. In addition, Dale's father and the Beaches were estranged for years until within a few weeks of his death, and the boy rarely saw them: the petitioner, on the other hand, is the woman who married and stood by his father and is now standing by him.

The change would require Dale's leaving the Commonwealth, since the Beaches live in Ohio, and changing schools. It would require his leaving a single older person for two much younger ones and their four still much younger children. It would be difficult to imagine a greater outward change in the life of a ten-year old.

The inward change would be even greater. In the evidence there is a report of the Family Guidance Clinic of Mercer County made at the petitioner's request through the Sunshine Society. The Director of this Clinic and a social worker interviewed the parties and many of the witnesses who testified in the instant case, and they were examined and cross-examined fully. The conclusion of this perceptive report is that Dale should remain with his mother. It has a finding that "the boy does not show evidence of severe, but some mild, emotional maladjustment", and another that to change his custody "a complete readjustment would be necessary".

The report puts its finger on the heart of the matter when, in speaking of Mrs. Beach, it says: "We wonder if she accepts this child as he is? Does she feel that she must remodel his personality? . . . he does not seem desirous of becoming a robust football hero, but shows interest in science, working in a lab, poetry, music, art, pets and gardening." Mr. Beach spoke of

"rounding out his childhood" and encouraging him in baseball, boating, swimming, and making male friends. The Beaches and their witnesses sought to give the impression that Dale was unathletic and abnormally withdrawn; there is contrary evidence, from the Chief of Police and the next door neighbor, to the effect that Dale's backyard was a playground frequently used for games by Dale and boys in the neighborhood. Whatever the issue on this point, the boy does appear from the whole record to be an introvert and the Beaches extroverts, and with their interest in games, which pervades their testimony, the impression persists that they would try to make him more like themselves. There are worse fates than being an introvert.

We see no compelling reason to change him at all and several excellent ones for leaving him to develop his natural shape of spirit. He has been through enough that is harrowing and he should not be put through more, whether it be pleasant or unpleasant. Change in itself is the bad thing for this boy, especially when it means change away from his natural quiet bent. Of the two parties, his stepmother seems from the record to give him greater understanding.

This is the gist of the case and the point on which we decide it. The Clinic's report reflects it well when it recommends that "this boy's best interests would be served if he could remain with the person who has been the only mother figure whom he can remember and in the community with which he is both familiar and endeared. To remove him at this time would emotionally tear him from the only love, security, and sentimental attachments he has ever known, and to place him in a family and surroundings which are relatively strange to him and to force him into a very emotionally upsetting experience which would require a great deal by way of adjustment including school curriculum,

at a time when he has already recently suffered the traumatic experience of losing his father by death."

In conclusion, there is a haunting quality of understanding in the stepmother's statement near the end of the record, when she said: "Q. You think that to be in a home with other children with their natural mother might not be quite fair to an outsider? A. No, sir, I do not believe it would be fair because try as you might the motherly love comes to your children first and others will come second. You may not think it will but eventually it does, and that slight would be an injury to him, very much so. He isn't the type of boy who can just be pushed around. Some robust children could be and some of them aren't of the high tension that he is, but that is not through any fault of mine, it's through some of the pressure that I've had to live under which has been far from pleasant for a number of years, and my primary concern has always been Dale; I've even slighted my husband for Dale because his life is just beginning, and it should be fulfilled to the best of anybody's ability and that should be my ability."

This should not be disturbed.

The decree is reversed at the cost of appellees. The record is remanded, with instructions to the court below to grant the prayer of the petition for the adoption of Dale Lee Snyder.