Opinion by
Woodside, J.,
From the days of ancient Israel, judges have looked upon child custody cases as among the most difficult and heart-rendering of all matters brought before them. So is it here.
This appeal was taken by Albert Gall after the Court of Common Pleas of Luzerne County refused his petition to obtain custody of his two sons from their maternal aunt and her husband. The case was ably tried, thoroughly briefed and well argued. The trial judge evidenced careful and conscientious consideration and came to the correct conclusion.
The boys are now 12 and 13 years of age. Their parents were married in February 1949, separated in November 1953, and divorced in 1954. The mother was given custody of the boys and the father visitation rights by an agreed court order in 1955. Thereafter the boys lived with their mother in Allentown until she died on July 19, 1962. Since the divorce, the father has resided with his mother in nearby Fountain Hill. Neither parent remarried.
When the mother died, the maternal aunt and her husband, Mrs. and Reverend Raymond A. Reed, Jr., complying with a request made in the mother’s will, took the children to their home in Wilkes-Barre where Reverend Reed is pastor of the Christ Lutheran Church. A few weeks later the father learned of his sons’ whereabouts and brought this action to obtain custody.
Presumptively, a child’s welfare is best served in the custody of a parent. Prima facie Gall is entitled to custody of his children. Com. ex rel. Bendrick v. White, 403 Pa. 55, 58, 169 A. 2d 69 (1961). The right of a parent is not absolute, but still is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the children’s welfare. Com. ex rel. Shamenek v. Allen, 179 Pa. Superior Ct. 169, 175, 116 A. 2d 336 (1955). Compelling *561 reasons must appear before a parent will be denied custody of his children. Com. ex rel. Shroad v. Smith, 180 Pa. Superior Ct. 445, 451, 119 A. 2d 620 (1956). See also Com. ex rel. Martino v. Blough, 201 Pa. Superior Ct. 346, 349, 191 A. 2d 918 (1963).
After carefully reviewing the evidence and examining the court’s findings and opinion, we have concluded that there are important factors in this case Avhich substantially affect the children’s welfare and which constitute compelling reasons for us to allow the Reeds to retain custody of the children.
First, the trial judge, who had the opportunity to interview the children and observe the parties as well as to hear and evaluate the testimony, decided that the children should remain Avith the Reeds. Although under the statute providing for the appeal it is our duty to “consider the testimony and make such order upon the merits of the case ... as to right and justice shall belong,” we are not free to nullify the fact-finding function of the hearing judge. Com. ex rel. Harry v. Eastridge, 374 Pa. 172, 177, 97 A. 2d 350 (1953). While conducting a custody hearing, a competent trial judge is observing the parties to evaluate their fitness to have custody of the children, as well as to appraise their testimony. The appellate courts lack the same opportunity to pass upon the ability and character of the parties. Com. ex rel. Hubbell v. Hubbell, 176 Pa. Superior Ct. 186, 193, 107 A. 2d 388 (1954). The burden thus rests upon the appellant to convince us that the court below erred. Com. ex rel. Wagner v. Wagner, 193 Pa. Superior Ct. 40, 41, 42, 163 A. 2d 708 (1960). The decision of Judge Bigelow, who had opportunities to evaluate this case which an appellate court lacks, weighs heavily for the appellee.
In the second place, the children, who were 11 and 12 years old Avhen interviewed by the trial judge, were emphatic in their desire to remain with the Reeds. *562 When children of their age are emphatic in their preference, the court must seriously consider the emotional effect upon them were they compelled to follow a course which they detest and fear. Com. ex rel. McDonald v. McDonald, 183 Pa. Superior Ct. 411, 416, 132 A. 2d 710 (1957).
■ Another important consideration is that the Reed home offers greater opportunities for the children. Gall had only a tenth grade education and his 71 year old mother received a limited education of approximately six years. Rev. Reed was graduated from college and seminary and has taken additional postgraduate courses. Mrs. Reed is a high school graduate and an experienced stenographer. They have three children younger than the Gall boys. The religious connection, the educational background, and the family relationship offered by the Reed home portends greater opportunities for the rearing of children than those offered by the Gall home. This is true even though the father’s income, religious interests and place of residence are adequate for the rearing of his sons. Gall is an active member of the Lutheran Church, his dwelling is adequate and his working habits and income as an employe of Bethlehem Steel Corp. are good.
A fourth consideration is that Gall and his mother are strangers to these boys. The boys do not remember their parental grandmother. Although Gall has supported his sons regularly by the payment to their mother of $20 a week under an agreed support order, he has seen very little of them since 1955. Indeed, he seems to have seen neither of the boys between 1955 and 1962 except while one of them was confined in a hospital in 1958. One Christmas he sent them each a card along with a $5 bill, but beyond that he gave them no presents and failed to acknowledge their existence at either Christmas time or on their birthdays. Although the Reeds do not reside in the same commu *563 hity .where the boys were being reared, they regularly visited the boys in their home and the boys spent, several weeks visiting in the Reed home before they- went there to live. . .
These reasons are sufficient to justify our affirmance of the court below, but there is other evidence supporting the decree which cannot be ignored. As stated above, after the divorce the mother had obtained custody and the father visitation rights. Shortly after returning from one of his visits with his father, the older boy, then 5, went to the toilet and began to cry. His mother found blood in the toilet which investigar tion showed was coming from his rectum. When asked what happened, he said, “Daddy was fooling around me.” At a subsequent visit the same thing happened and the same explanation was given. The boy required and received medical attention. The police and probation officers were notified.
Although objection was made to much of the evidence which established these facts, it was properly admitted. The court after relating the testimony in great detail attached no weight to the evidence noting particularly the absence of the physician, the police and probation officers from the hearing in this case and the failure of counsel for respondents to question the boy. The doctor, police, and probation officers seemed equally available to both sides. Unless the father admitted wrongdoing, which he apparently did not, the testimony of the police and probation-officers would have been inadmissible as hearsay.' The father does not question that they were notified. The father, himself, testified that the doctor told him, “There was a possibility of just a. hard bowel movement.” (Emphasis supplied) It is thus evident that the doctor would testify that he could not determine whether the injury was caused by someone’s misconduct or. the child’s physical condition. Considering the effect that *564 testifying on this subject may have had on the boy and the value of the testimony of a boy now 12 concerning an event at the age of 5, we cannot criticize counsel or court, all of whom had the opportunity of questioning the boy, for not doing so.
The facts of this event are not in dispute. It appears that the boy had no trouble with his rectum except on two occasions immediately after he visited his father, that on those occasions he bled and needed medical treatment which he received from a physician, that the boy said on both occasions “Daddy was fooling around with me,” that the matter was reported to the police and the probation office and that the father thereafter discontinued his visits.
There is certainly insufficient evidence to convict the father of crime, but the father is not on trial for a crime. The evidence is not in dispute — only the inferences to be drawn from it, and thus we are not faced with believing witnesses which the trial judge disbelieved or disbelieving witnesses he believed. The trial judge made no specific finding of fact concerning the fitness of the father. In his discussion, he noted that “The Court has not found the father unfit.” He thus concluded that the evidence was insufficient to establish guilt on the part of the father.
The evidence on this point creates a serious problem. The boy developed a physical condition on two occasions when he had been with his father. He must have made some remarks which led his mother and the others present to conclude that his father was responsible. It is not fair to the father to conclude that he was guilty of a serious offense without strong evidence of a convincing quality, but neither is it fair to the children to ignore evidence of two occurrences which throw real and substantial doubt upon the advisability of giving custody of these children to the father. We must give foremost consideration to the future welfare *565 of tbe children, and in doing so we cannot sweep all this evidence under the rug. It must be given some weight against the father.
Pastor Reed has been called to a church in Cleveland, Ohio, and, upon petition of the appellant, we enjoined him from taking the children out of the Commonwealth until this appeal was decided. The Reeds’ intention to take the children from the Commonwealth weighs against their right to custody. We have considered this intention, and do not deem it of sufficient moment to overcome the reasons supporting our conclusion. We are dissolving the injunction. We do this with some reluctance because it will tend to further widen the breach between the boys and their father. We have confidence that in the application of their religious beliefs, Rev. and Mrs. Reed will influence the children against antipathy toward their father, and that they will not deny the appellant all opportunities of seeing his children.
Order affirmed.
Weight, J., concurs in the result.