Nolan et al. *v.* J. & M. Doyle Company, Appellant.

Argued March 19, 1940. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Barnes and Patterson, JJ.

*Frank B. Quinn,* of *English, Quinn, Leemhuis & Tayntor,* with him *Thomas E. Doyle,* for appellant.

*Henry A. MacDonald,* with him *A. Grant Walker* and *Gunnison, Fish, Gifford & Chapin,* for appellees.

OPINION BY MR. JUSTICE MAXEY, May 6, 1940:

The defendant corporation has appealed from a judgment entered upon an adverse verdict in an action brought by the plaintiff for breach of an alleged oral contract, to recover damages consisting of profits which plaintiffs claim they would have made had the contract not been broken by defendant.

Appellees are a partnership engaged in business as marine contractors in and about the City of Erie. In 1937 the Pennsylvania State Park and Harbor Commission of Erie advertised for bids for the dredging of the east and west canal basins situated at Erie. Appellees possessed some of the facilities and equipment necessary to do the work, but not the necessary capital. J. W. Nolan, the head of appellees' firm, had previously been employed by the commission to make the preliminary soundings to determine the nature of the dredging operations required in the basins, and he was therefore familiar with the nature of the work to be done. Nolan testified that he wanted the contract for his firm, but being without sufficient funds to complete the contract if it should be awarded to his firm by the State, he approached Harry J. Doyle, the president and active manager of appellant's business, which was that of general contracting, specializing in road and sewer construction. According to Nolan's testimony, an arrange-

ment was finally entered into between himself and Doyle whereby appellant would bid on the contract, and if the bid was successful, appellees would conduct the actual operations, and the profits, if in excess of $5,000, would be divided equally between them. This was the oral agreement forming the basis of appellees' suit. By its further terms, appellant was to advance to appellees whatever sums might be necessary to recondition the latter's equipment, to provide the performance bond, and generally to finance the transaction until completion and payment by the State. The sums advanced to appellees were to be repaid to appellant out of the former's share of the profits.

On the basis of this oral contract, a bid in the amount of $41,300 was prepared in Doyle's office in appellant's name and forwarded to Harrisburg on November 9, 1937. The next day the bids were opened, appellant was found to be the lowest bidder, and it was awarded the contract. The formal written contract between appellant and the Commonwealth was signed in December of the same year. No mention of appellees appears in this instrument, although it contains a provision voiding the contract if assigned or sublet by the contractor without the consent of the park and harbor commission.

Both parties agree that nothing was done under this written contract for a period of several months. However, the appellees' evidence was that pursuant to the oral agreement, sums amounting to between $1,500 and $2,000 were advanced by appellant to appellees, who used the money in repairing their dredges and scows and putting them into operating condition in readiness for the dredging. Appellant admitted advancing $2,063.97 for this purpose. In February, 1938, further negotiations between the parties took place for the purpose of formulating a written contract between them defining the rights of each. Such a contract was actually prepared, by the terms of which appellees would have agreed to do the work for $26,300, guaranteeing appel-

lant a clear profit of $15,000. Appellees signed the contract, but it was never executed by appellant. According to Nolan's testimony, the express understanding between him and Doyle, acting for appellant, was that this written contract should not take effect and supersede the prior oral agreement until executed by both parties, an event which never occurred.

Shortly after these fruitless efforts to reach a new agreement, appellant terminated its negotiations with appellees, refused to have any further dealings with them, and sublet the work to be done under the contract with the Commonwealth, to a third party, who later performed it, with the result that appellees received none of the benefits promised them except the advances for repairs to their equipment. Appellees submitted evidence as to the profits they would have realized had appellant permitted them to perform in accordance with their oral agreement.

Appellant's principal defense was that no binding oral agreement was ever entered into with appellees, that the matter between them never got beyond preliminary negotiations, and that, in any event, a prior oral agreement, if reached by the parties, was merged into the subsequent written contract, which though never executed by appellant nevertheless took effect and superseded the oral contract sued upon. The trial judge submitted to the jury the dispute as to whether the oral agreement was entered into and, if so, was superseded, and it returned a verdict for appellees in the sum of $3,665.14. This appeal is from the denial of appellant's motion for judgment n. o. v.

Appellant's contention that the oral agreement upon which appellees based their claim was superseded and merged into the subsequent unexecuted written contract, is answered by the jury's verdict. Appellees' evidence supported their position that the proposed written contract was to take effect only when executed. The fact that appellees signed it, did not make it operative;

appellant's signature was still wanting. We pointed out in *Upsal St. Realty Co. v. Rubin,* 326 Pa. 327, 330, 192 A. 481 (cited in 122 A. L. R. 1224), quoting from Restatement of Contracts, sec. 26, Comment (a) : "If an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made [i.e., executed], the preliminary negotiations and agreements do not constitute a contract." In Comment (b) of the same section, we find it stated: "If the parties indicate that the expected document is to be the exclusive operative consummation of the negotiation, their preceding communications will not be operative as offer or acceptance. This also must be shown largely by oral testimony." See also *Northwestern Consolidated Milling Co. v. Campbell & Campbell,* 78 Pa. Superior Ct. 96. If appellant's own evidence is to be believed, it is difficult to find support for the argument it now advances. Its president, Doyle, testified that *no* contract was ever entered into between his company and the appellees. There is nothing in the record to show that the writing in question was accepted and acted upon by appellees, much less appellant, as redefining the rights of the parties. Appellees never had a chance to perform, for appellant summarily ended the negotiations and sublet the contract to someone else. The cases cited by appellant relate to situations where the parties to a contract orally agree on all its terms with the understanding that it shall thereafter be placed in writing. That is what the Restatement of Contracts, sec. 26, calls the adoption of a written memorial thereof. In such cases, although there has been a "meeting of the minds," the parties may fail to evidence their agreement by a writing, but that failure does not make the oral agreement inoperative.

It is argued that the contract between appellant and the Commonwealth was *ultra vires,* since appellant was qualified to engage only in the business of contracting with reference to construction projects and had no authority to enter into a contract for marine dredging and

that therefore appellees can reap no benefit from their oral agreement. The powers and purposes of the appellant corporation do not appear from the record before us. It actually engaged in the business of contracting. As to whether or not it had the power to embark on a venture requiring under-water excavation, the record is not informative. It certainly had the power to make an agreement with appellees for the performance by the latter of operations in which appellant could not engage without violating its corporate charter. Moreover, the defense of *ultra vires* by a corporation on a contract to which it is a party is abolished by section 303 of the Business Corporation Law of May 5, 1933, P. L. 364 (15 PS sec. 2852—303). The suggestion by appellant that its agreement with appellees was beyond its power to enter into, because it was in effect a partnership agreement, finds no support in any of the evidence tendered by either party, or in any reasonable view of the kind of undertaking which the agreement covered. In the corporate activities of appellant the business of dredging the canal basins at Erie was but an isolated transaction, in which it decided to engage in coöperation with appellees. The engagement was a joint business adventure in which both parties participated for profit; it was not an agreement "to carry on as co-owners a business for profit," as a partnership is defined in the Uniform Partnership Act of March 26, 1915, P. L. 18, section 6 (59 PS sec. 11). A corporation has capacity to enter into a contract providing for the sharing of profits in a joint adventure, if the nature of the enterprise is within the scope of its corporate powers: *Clinchfield Fuel Co. v. Henderson Iron Works Co.*, 254 Fed. 411; *Excelsior Motor Mfg. & Supply Co. et al. v. Sound Equipment, Inc.*, 73 F. (2d) 725; 14-A C. J. 293; 13 Am. Jur., Corporations, sec. 825; 80 A. L. R. 1049, and cases there cited; 6 Fletcher, Cyclopedia of Corporations (Perm. Ed.), sec. 2520.

The contention that no binding agreement was effected because appellees' negotiations were solely with Harry J. Doyle, president and general manager of appellant, and that he had no authority to bind the corporation, must be rejected. All the evidence in the record demonstrates that Doyle was the active, directing head of the corporation, who supervised and negotiated the making of its contracts. He owned 100 out of the total of 300 shares of its outstanding capital stock. He was one of the two directors, the other being his brother, who was secretary and treasurer. The minute book, offered in evidence, disclosed that no meeting of directors had been held for several years prior to entering into the agreement with appellees. In 1921 a resolution of the directors, never since repealed, had been adopted authorizing either the president or secretary to bind the corporation under engagements for work to be done in the City of Erie. In the case of several previous contracts it appeared that Doyle alone had signed them on behalf of the appellant; in fact, the contract whereby appellant sublet the canal basin dredging to a third party was signed by Doyle alone. The course of dealing disclosed by the evidence indicated ample authority in Doyle to bind the corporation by an oral or written contract. The evidence on the question of agency was sufficient to submit to the jury, and its verdict cannot be disturbed: *Culver v. Pocono Spring Water Ice Co.*, 206 Pa. 481, 56 A. 29; *Singer Mfg. Co. v. Christian*, 211 Pa. 534, 60 A. 1087; *Weissburg v. Peoples State Bank of New Kensington*, 284 Pa. 260, 131 A. 181; *Brock et al., Exrs., v. Real Est. Land Title & Trust Co.*, 318 Pa. 49, 178 A. 146.

The only other issue presented on this record is whether appellees are barred from maintaining their suit because of the provision in the contract between appellant and the Commonwealth that it should not be assigned by appellant without the Commonwealth's consent. So far as the evidence reveals, there was never any

assignment by appellant to appellees of the former's rights against the Commonwealth, nor any attempt to assign such rights. Appellees acquired no rights against the Commonwealth; they merely entered into an agreement with appellant to perform for the latter the duties required of it by its contract with the state. Appellant's contention would have to be considered if advanced by the Commonwealth in a suit brought against it by appellees as assignees of appellant's rights. In such case, the rule enforced in *Concrete Form Co., Inc., for use, v. W. T. Grange Construction Co.,* 320 Pa. 205, 181 A. 589, would be applicable, namely, that a right may not be effectively assigned where such assignment is prohibited by the writing creating the right. As pointed out in the Restatement of Contracts, sec. 176, the rule exists for the benefit of the obligor who seeks to prevent the intrusion of third parties by inserting a provision forbidding assignment of rights under his contract without his consent. That is not the present case, for here the suit against appellant is upon an independent contract which it breached by refusing to permit appellees to perform under it.

The judgment is affirmed.