486 A.2d 478

INGRASSIA CONSTRUCTION COMPANY, INC.,

v.

**John M. WALSH, Individually and trading as Walsh Steel Service Company, Appellant.**

Superior Court of Pennsylvania.

Submitted March 14, 1984.

Filed Dec. 28, 1984.

Petition for Allowance of Appeal Denied June 5, 1985.

Howard M. Levinson, Wilkes-Barre, for appellant.

Robert E. Simpson, Jr., Easton, for appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

CAVANAUGH, Judge:

This is an appeal from the Judgment entered in the Court of Common Pleas of Monroe County denying defendant's Motion for Judgment N.O.V. Appellant advances two bases for contending that the court below erred in denying his Motion for Judgment N.O.V.: (1) that the appellee was not entitled to a verdict based on the theory of oral contract because he did not properly amend his complaint; and, (2) that there was no "meeting of the minds" to support the jury's finding of a contract. For the reasons stated below, we affirm.

The standard of review for an order denying a motion for a judgment n.o.v. is well defined. It is the same standard used by the trial judge in deciding whether to grant the motion. "Accepting as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made, and rejecting all testimony and inferences to the contrary," we must reverse such an order denying the motion "when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case." *Timbrook v. Foremost Ins. Co.*, 324 Pa.Super. 384, 387, 471 A.2d 891, 892–93 (1984). It

is not within this court's province to weigh the evidence or to render judgments as to credibility. *See City of Bethlehem v. Gawlik,* 30 Pa. Commonwealth Ct. 390, 374 A.2d 540, 542 (1977); P.L.E. Judgment § 146.

Appellant, Walsh, first contends that a Judgment N.O.V. is proper here because the appellee, Ingrassia, proceeded at trial under a theory of recovery which was not pleaded in the manner prescribed by Pa.R.C.P. No. 1033.[1] Pa.R.C.P. No. 1033 requires either "filed consent of the adverse party" or "leave of court" to amend a pleading. Walsh alleges that Ingrassia's original and first amended complaints sought recovery based on a theory of written contract, and that later appellee forwarded to appellant a copy of a proposed second amended complaint. Appellant contends that he consented to the proposed second amended complaint by letter. According to Walsh, the proposed second amended complaint to which he consented did not differ from the earlier complaints as to the theory of recovery asserted. In both the original, the amended, and the proposed second amended complaints, Ingrassia allegedly averred a theory of recovery based on *written* contract. However, according to Walsh, the second amended complaint that Ingrassia actually filed differed from the one Walsh consented to in that the one actually filed set forth a theory of recovery based on *oral* contract. Our review of the record indicates that Walsh's allegation is unsubstantiated. Furthermore, Walsh alleges that the second amended pleading was filed without leave of court.[2] Thus, according

1. Rule 1033. Amendment

   A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

2. "Pa.R.C.P. 1033 does not set forth the procedure which must be followed. It only states that a party may amend by consent or by leave of court." Amendment via "Petition and rule", and even via

to Walsh's theory neither of the statutorily prescribed methods for amendment was followed. Contrary to this contention, Ingrassia maintains that his amended complaint which averred a theory of recovery based on oral contract was "properly filed." We need not decide whether the appellee amended the pleading in the statutorily proper manner, for even if he did not, appellant has waived any right he may have had to object to it for the reasons stated below.

■ Our review of the record in the instant case reveals that Walsh was aware of Ingrassia's intention to employ the theory of recovery based on oral contract. The amended complaint averred the existence of an oral contract; moreover, evidence of the existence of an oral contract was admitted at trial.[3] Our review of the record indicates that Walsh failed to object to the evidence. "Although it is correct that a party's proof must be consistent with his pleadings ... a failure to object to a variance at trial is a waiver of the right to object to it thereafter." *Commercial Trading Company, Inc. v. Milsan Mills Incorporated,* 327 Pa.Super. 407, 411–412, 476 A.2d 16, 18–19 (1984) (citations omitted). Timely objection would have enabled appellee to seek leave to file a proper amendment.[4] Thus, Walsh's argument that a new trial must be ordered because Ingrassia failed to amend his complaint in accordance with Pa.R. C.P. No. 1033 has been waived.

motion were held permissible. *Kiley v. Tredyffrin Township Board of Supervisors,* 17 D & C.3d 431, 433 (1980).

3. Judge Thomson, the trial judge, wrote: "The theory perhaps most heavily relied upon by the Plaintiff at trial was that an oral contract was formed." Lower Court op. at 4.
Our review of the record indicates that both plaintiff's agent and defendant testified as to whether a binding oral contract existed or not.

4. We note that "(t)he policy of Pennsylvania courts is that amendments to pleadings should be liberally allowed in order to secure a determination of cases on their merits, except in those cases where surprise or prejudice to the other party would result ..." *Tanner v. Allstate Insurance Co.,* 321 Pa.Super. 132, 137, 467 A.2d 1164, 1167 (1983).

■ The rule which forbids the proof from being at variance from the pleadings is based on the sound policy of "insur[ing] that the defendant will not be taken by surprise at the trial..." P.L.E. Judgment § 176, *See Computer Print Systems, Inc. v. Lewis*, 281 Pa.Super. 240, 422 A.2d 148 (1980). The rule will not be applied to punish its violator, however, where the facts suggest that this policy has not been undermined. Thus, when testimony is admitted which is not covered by the pleadings, if the defendant fails to object to it he will not later be heard to claim that he was misled by the variance. A defendant, "having taken his chance on a favorable verdict", has waived his right to object to the variance on appeal. *Malone v. Melnick*, 378 Pa. 483, 106 A.2d 806 (1954); *In Re Adoption of Noone*, 376 Pa. 437, 103 A.2d 729 (1954); *Tronzo v. Flohr Chevrolet, Inc.*, 231 Pa.Super. 455, 331 A.2d 555 (1974).

Walsh cites *John Goffredo & Sons, Inc. v. S.M.G. Corp.*, 300 Pa.Super. 112, 446 A.2d 255 (1982) to support his contention that the theory of oral contract was not properly before the court and that therefore a new trial must be granted. That case, however, is distinguishable from the instant case. In *Goffredo*, the complaint pleaded a theory of recovery based on written contract. The complaint was amended to plead a theory of recovery based on oral contract, and this theory was argued at trial as well. The trial court allowed the amendment, but this court (Judge Johnson writing for the majority) held that since the statute of limitations had run prior to the time of the amendment, leave to amend was improperly granted. In the instant case, our review of the record reveals no objection that the statute of limitations had run prior to the time the theory of oral contract was pleaded. Any defense based on the statute of limitations that may have existed has been waived.

Appellant next contends that a Judgment N.O.V. should have been granted because there was no "meeting of the minds" between the parties on material provisions thus preventing formation of a contract. The pertinent facts

involved in the instant appeal may be summarized as follows. Ingrassia Construction Company, Inc., appellee, was general contractor for the construction of a library building at East Stroudsburg State College. With respect to this job, it obtained a telephone bid on March 16, 1977 from Walsh Steel Service Company pertaining to steel and wire mesh work. A price was quoted in the bid for both the reinforcing steel and for the wire mesh and it delineated certain of the subcontractor's duties. Ingrassia's agent, Herbert Johnson, was in communication with appellant Walsh between March and June of 1977 concerning the pending job. Mr. Johnson attempted to have the price lowered, but to no avail. Mr. Johnson testified that an agreement was reached during this period in accordance with the terms of the verbal telephoned bid of March 16.

The appellant, Mr. Walsh, testified that an agreement was reached as to some, but not all, matters. Two matters not agreed upon were the terms of payment, and the issue of which party was to supply certain equipment and tools. It is undisputed that although both parties sent writings containing proposals to the other, neither party signed the other's writing. These proposals exchanged by the parties contained differing terms as to terms of payment and as to which party was to supply certain equipment, among other things. Mr. Johnson, Ingrassia's agent, testified that an agreement was reached prior to the exchange of proposals. At Walsh's behest, Mr. Lou Fallon visited the construction site on July 12, 1977, for the purpose of commencing work. Mr. Fallon was informed by the superintendent on the job that Ingrassia would not provide certain equipment called "standees" needed for the job Mr. Fallon was to perform. As a result of this controversy, Walsh refused to perform. Disputed evidence at trial showed that the custom of the industry was for the subcontractor to provide this equipment. Ingrassia contends that Walsh's refusal to perform put Walsh in breach of contract. Walsh, on the other hand, maintains that a binding contract was never formed. At trial, the jury returned a verdict for Ingrassia, for $12,-

750.00. Walsh's motion for a Judgment N.O.V. was denied and this appeal followed.

■ Where the facts are in dispute, the question of whether a contract was formed is for the jury to decide. *O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182, 185 (E.D.Pa. 1978). "People do business in a very informal fashion, using abbreviated and elliptical language. A transaction is complete when the parties mean it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact." 1 A. Corbin, *Corbin on Contracts* § 29 (1963).

■ The appellant contends that because there was no "meeting of the minds", contractual formation never occurred. A true and actual meeting of the minds is not necessary to form a contract. 1 S. Williston, *Williston on Contracts* §§ 66, 94 (3d ed.1957); 1 A. Corbin, *Corbin on Contracts* § 107 (1963). In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter. *General Warehousemen and Employees Union Local No. 636 v. J.C. Penney Company*, 484 F.Supp. 130, 135 (W.D.Pa.1980).[5] In the instant case, it matters not whether Walsh truly believed a contract did not exist *if* his manifested intent reasonably suggested the contrary to Ingrassia. Furthermore, a contract could be formed even if Walsh did not contemplate that legal consequences would attach to the transaction.[6]

■ In the instant case, a reasonable jury could find the existence of either a contract implied in fact, or an oral contract, based on the evidence admitted. Both theories

---

5. A party's subjective intent will form the basis of a contract only if the other party knows or has reason to know of the intent. 1 A. Corbin, Corbin on Contracts, § 107 (1963).

6. J. Murray, Murray on Contracts, § 20 (2d ed. 1974).

were included in the Judge's charge to the jury. The surrounding facts of the transaction in question—including the original telephone bid, the telephoned negotiations, appellant's July 12th attempt to commence work, and Ingrassia's apparent forebearance from contracting with another company to do the work—could indicate to a reasonable jury Walsh's intent to commit himself to perform the job. A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings.[7] Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. Restatement (Second) of Contracts § 22(2) (1981). "Implied contracts ... arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." *Pollock Industries, Inc. v. General Steel Castings Corp.*, 203 Pa.Super. 453, 201 A.2d 606, 610 (1964). (Citation omitted).[8]

Another theory which could support a finding of contract by a reasonable jury in this case is that of oral contract. Evidence was admitted at trial which showed that an oral agreement was reached between March and June, 1977. The jury was free to either believe or disbelieve it.

█ Appellant alleges, however, that the parties did not intend to be bound to a contract absent a signed writing. If a party wishes to withhold his assent upon the condition that a contract be signed, it is surely within his province to

7. A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation. An express contract is formed by either written or verbal communication. The intent of the parties to an implied in fact contract "is inferred from their acts in light of the surrounding circumstances." *Cameron v. Eynon*, 332 Pa. 529, 532, 3 A.2d 423, 424 (1939).

8. Unlike the regional reporter, the Atlantic Second, the official Pennsylvania Superior Court Reports does not print the opinion in which this quotation appears, but instead states that the court affirms on the basis of the Court of Common Pleas opinion. It is in the Court of Common Pleas opinion that this quotation appears. This opinion can be found at 33 Pa.D. & C.2d 383, 389 (1964).

do so. However, there exists a presumption that the parties intend their contract to be operative absent a signed writing unless one of them indicates to the contrary. *See* 1 S. Williston, *Williston on Contracts* § 28 (1957).[9] Our review of the record discloses no such indication by either party.

Walsh next argues that the "missing" terms prevent contractual formation. We disagree. Walsh argues that the parties never reached agreement over who was to supply "standees"—equipment necessary to the job. "A court cannot enforce a contract unless it can determine what it is." I A. Corbin, *Corbin on Contracts* § 95 (1963). If a court is unable, due to indefiniteness or incompleteness in contracting, to determine whether the contract has been performed then it must find that no contract existed in the first place. *See Columbian Rope Co. v. Rinek Cordage Co.,* 314 Pa.Super. 585, 592, 461 A.2d 312, 316 (1983). However, there was disputed testimony showing a usage in the trade that the subcontractor is to supply the standees. A usage of trade or industry custom may give precision to an otherwise indefinite contract. *See* E.A. Farnsworth, *Contracts* § 713 (1982). The jury was free to believe or disbelieve the evidence as to trade usage, and this court will not interfere with the jury's factfinding function.

As to the absence of agreement over the terms of payment, there is an implied condition that absent contractual terms to the contrary, payment is to occur upon completion of the job. *Commonwealth General State Author-*

9. Judge Goodrich, referring to Williston and Corbin, wrote: "The emphasis of these two eminent writers is, it seems to us, inclined toward finding the formation of a contract prior to the signing of the document unless the parties pretty clearly show that such signing is a condition precedent to legal obligation. And since contract law has passed the formalism of elaborate doctrines pertaining to sealed instruments, it seems to us such emphasis is quite natural and quite correct." *Smith v. Onyx Oil & Chemical Co.,* 218 F.2d 104, 108 (3d Cir.1955). *See also Nolan v. J & M Doyle Company,* 338 Pa. 398, 13 A.2d 59 (1940).

*ity v. Loffredo,* 16 Pa. Commonwealth Ct. 237, 247, 328 A.2d 886, 893 (1974).

Walsh further contends that Ingrassia's forwarding of proposals to him following his bid constitutes a counteroffer. A counteroffer would have terminated Ingrassia's power of acceptance. In the instant case, there was evidence of a completed agreement based on the telephone conversations sometime between the months of March and June. Besides this, there was evidence of an implied in fact contract. Rather than consider the proposals as counter offers, a reasonable jury could have concluded that a contract already existed, and therefore, the proposals would merely be inquiries seeking to effect a modification of an existing contract or to make an existing contract more definite.

In conclusion, as there was ample evidence from which a reasonable jury could find the existence of a contract, we shall not retry the case and invade the jury's traditional fact finding function.[10] A reasonable jury could conclude that either an oral contract existed (based on the telephone conversations between Ingrassia's agent and Walsh) or that a contract implied in fact arose (evidenced by the course of events and the parties' behavior over the period of time from the bid to the appellant's refusal to perform). For these reasons, we affirm the trial court's Order Denying the Judgment N.O.V.

Judgment affirmed.

WIEAND, J., concurred in the result.

10. *See Brown v. Shirks Motor Express,* 393 Pa. 367, 375, 143 A.2d 374, 379 (1958): "When the jury returned its verdict for the plaintiff here, it obviously rejected the defendant driver's statement that he did not move the tractor except on orders of Brown or Crone. And, once rejected, the statement lost all vitality and could not be used by the court to give life to a theory repudiated by the verdict.
"A jury verdict is like a building, which is erected from a vast supply of materials, only part of which can satisfy the blueprint of the architect. What is rejected, therefore, has no place in the building, and it can not be forced into the completed structure."