J-S26042-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| HIGH SWARTZ, LLP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. SEWER & DRAIN, INC. D/B/A MR. | : | |
| ROOTER PLUMBING, JEREMY BOWMAN | : | |
| AND JRB, INC. D/B/A MR. ROOTER | : | |
| PLUMBING | : | |
| | : | |
| Appellants | : | No. 484 EDA 2015 |

Appeal from the Judgment Entered April 23, 2015
in the Court of Common Pleas of Bucks County
Civil Division at No(s): No. 2012-1762

BEFORE:    OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED MAY 16, 2016**

U.S. Sewer & Drain, Inc. d/b/a Mr. Rooter Plumbing (USD), Jeremy

Bowman, and JRB, Inc. d/b/a Mr. Rooter Plumbing (Mr. Rooter) (collectively,

Appellants) appeal from the judgment entered on April 23, 2015, against

them and in favor of High Swartz, LLP. We affirm.

The opinion authored by the Honorable Gary B. Gilman, which

summarizes the testimony from the non-jury trial held on January 28, 2014,

sets forth the underlying facts in this case.

> High Swartz has represented [Appellants] since 2004 in
> approximately twelve to fifteen legal matters.  James Shrimp
> [(Mr. Shrimp)] is a partner at High Swartz, and it was primarily
> his work as the attorney on the underlying litigation matters
> which forms the basis of the fees in dispute.

---

*Retired Senior Judge assigned to the Superior Court.

Mr. Bowman is the President, agent, a shareholder, and an employee of USD, an S-Corporation in the business of lining pipes. JRB was a duly registered Pennsylvania Corporation, a plumbing franchise, trading as Mr. Rooter, a fictitious name. This litigation deals with fee collection issues specific to five matters wherein High Swartz provided legal representation to one or more of [Appellants]. Mr. Bowman testified that all of the legal matters High Swartz handled for [Appellants] resulted from [Appellants'] business dealings with other commercial entities or customers.

… Mr. Shrimp claimed that his 2004 fee agreement is supportive of the assertion by High Swartz that Mr. Bowman knew the terms of representation, as previously established between the parties, when he retained High Swartz for representation in all of the matters at issue in the litigation. … Mr. Shrimp … testified that he was not aware of written fee agreements between High Swartz and USD or any of its related entities specifically relating to the fees disputed herein. Mr. Shrimp testified that correspondence from High Swartz was directed or addressed to Mr. Bowman, as president of USD, or to Mr. Rooter, to the attention of Mr. Bowman. Mr. Shrimp testified that the vast majority of payments received by High Swartz for representation of [Appellants] were from USD or Mr. Rooter. Mr. Shrimp testified that he told Mr. Bowman that he would be personally liable for the services that High Swartz provided to USD or to Mr. Rooter, although he had no written documentation to support this statement. Mr. Bowman testified that he never personally agreed to pay for the legal services provided to [Appellants] by High Swartz.

In August of 2007, [Perma Liner Industries, Inc. (PLI)] filed a [c]ivil [c]omplaint in the Eastern District of Pennsylvania against USD, Mr. Bowman and another individual. Among other remedies, PLI was seeking an injunction and breach of contract damages from USD and Mr. Bowman. PLI alleged that USD had not been using their systems and materials, breaching a signed representation agreement between the parties. PLI further alleged that USD had been wrongfully buying and using materials from another company. PLI asserted claims based upon breach of contract, violations of the Lanham Act, Federal and Pennsylvania Trademark Acts, copyright and trade secrets

violations, defamation, libel and slander, and tortious interference.

Mr. Shrimp testified that he was on vacation in Williamsburg, Virginia when Mr. Bowman called him about the PLI litigation and asked the law firm of High Swartz to represent [Appellants]. Mr. Shrimp testified that his recollection was that the PLI breach of contract action was directed against USD but the remainder of the PLI claims sought damages and other remedies against [Appellants'] corporate entities and against [Mr.] Bowman, individually. High Swartz's hourly billing rates for the PLI litigation ranged from [$160] per hour to [$250] per hour for the attorneys involved and also included an hourly rate of [$150] for the work performed by a paralegal. Mr. Shrimp testified that he did not discuss his hourly billing rates with Mr. Bowman when he was called by him in Williamsburg, but that he would have had a follow-up conversation the next week when he returned from vacation. Mr. Shrimp testified that Mr. Bowman was concerned about his individual, personal liability in the PLI litigation. Mr. Bowman testified that he understood from his counsel at High Swartz that the individual claims in the PLI litigation were "ancillary," and that he should not be worried about those claims. PLI was seeking damages against [Appellants] in the range of [$600,000 to $800,000]. Mr. Shrimp testified that there were thousands of pages of discovery exchanged between the parties. Depositions were conducted in Pennsylvania and in Florida. The PLI litigation took place over a time period of 3 years. Mr. Shrimp testified that the PLI lawsuit was settled with the approval of Mr. Bowman. Mr. Shrimp further testified that he believed the terms of the settlement were quite favorable to USD and to Mr. Bowman. Mr. Bowman testified that he "begrudgingly" took the advice of counsel to settled the PLI litigation, despite his desire to proceed to trial. High Swartz billed [Appellants,] its clients, a total of $218,531.59 for the PLI litigation. The law firm was paid $150,743.96, and is still owed the sum or $67,787.63 by [Appellants].

In or about June 2009 [Idearc Media (IM)] initiated breach of contract litigation with related claims against Mr. Bowman and USD in the Eastern District of Pennsylvania. In a letter dated June 29, 2009, Mr. Shrimp advised Mr. Bowman, along with

other information, that the High Swartz hourly rates for the IM litigation would range from $165 to $300. Per Mr. Shrimp, High Swartz prepared various pleadings and conducted "incredibly extensive" discovery defending the IM litigation. Mr. Shrimp testified that IM had asserted damage claims against Mr. Bowman and USD in excess of $800,000, in addition to attorneys' fees and interest. The IM litigation continued for approximately two and one-half years. The IM litigation was resolved by settlement in the amount of $400,000, to be paid by [Appellants] over a time period of ten years.[1]

_____

[1] Mr. Bowman initially testified that the settlement amount was $800,000. He later recalled that the correct amount achieved through settlement was $400,000, unless and until a default occurred, at which time the amount owed would default to the initially owed debt of $800,000.

_____

Mr. Bowman testified that as part of the IM settlement, he was not required to sign and accept responsibility as an individual. Mr. Bowman testified that he was not at all satisfied with the IM settlement, and that he would have preferred to proceed to trial. High Swartz billed [Appellants] $64,458.86. Mr. Bowman and USD paid $1,763.50. Accordingly, High Swartz is still owed the sum of $62,695.36 by [Appellants].

Mr. Shrimp testified that in December 2007, High Swartz was retained to represent "all of Mr. Bowman's entities, Mr. Rooter, [USD], and Mr. Bowman individually," in a breach of contract lawsuit brought against [Appellants] by [Gary and Lori Pinar (the Pinars)]. By letter dated December 14, 2007, Mr. Shrimp provided Mr. Bowman his hourly rate for the Pinar litigation, $215, and stated that the hourly rate of other attorneys and paralegal support in the firm ranged from $300 to $120. Mr. Shrimp testified that most of the legal work related to this matter was done by a High Swartz associate attorney. The ultimate arbitration award in the Pinar litigation was for approximately $1,300. Mr. Shrimp testified that he is not aware

of that award having been appealed. Mr. Shrimp testified that Mr. Bowman never informed him that representation by High Swartz did not include the law firm representing him personally. High Swartz billed USD, Mr. Bowman and JRB $9,118.46 with respect to representation of [Appellants] in the Pinar litigation. This encompassed the time frame from February 2009 through August 2011. Mr. Shrimp testified that [Appellants] have not paid any monies toward the law firm's bill, so that the sum of $9,118.46 still remains due to High Swartz from [Appellants] in connection with the Pinar litigation.

Mr. Shrimp testified that in 2010, Mr. Bowman requested that High [Swartz] represent USD in connection with a claim brought by [Commerce and Industry Insurance Company (CII)]. Mr. Shrimp testified that the CII claim related to [Appellants'] alleged underpayment of workers' compensation insurance premiums. High Swartz billed USD $2,691.14 with respect to the CII [l]itigation. Mr. Shrimp testified that no payments have been made by [Appellants] to High Swartz in connection with the CII litigation.

Mr. Shrimp testified that in 2009, Mr. Bowman, on behalf of USD, brought the [Allstate Power and Vac., Inc.] matter to High Swartz for representation. This matter involved claims for alleged nonpayment of materials which [Appellants] purchased. Mr. Shrimp testified that the amount of fees billed to [Appellant] USD in the litigation totals $6,392.16. Mr. Shrimp testified that no fees have been paid by [Appellants] to High Swartz in connection with the Allstate litigation.

Trial Court Opinion, 9/23/2014, at 1-9 (paragraph numbers, numerals, citations to the record, some footnotes, and headings omitted).

On September 23, 2014, the trial court issued a verdict and order finding against High Swartz and in favor of Appellants on its claims for breach of contract. *Id*. at 16. The trial court found in favor of High Swartz and against Appellants on its claims for contract implied in fact and *quantum*

- 5 -

*meruit* for the of the PLI, IM, and Pinar litigation matters in the sum of $139,601.45. *Id*. The trial court also found in favor of High Swartz and against USD only on its claims for contract implied in fact and *quantum meruit* for the CII and Allstate litigation matters in the sum of $9,083.30. *Id*.

Appellants timely filed post-trial motions, which were denied. Appellants timely filed a notice of appeal. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellants set forth the following issues for our consideration.

I. Whether the [trial] court erred by awarding damages to [High Swartz] for legal services rendered to clients in violation of its obligation under Pa.R.P.C. 1.5(b) and fiduciary duty to utilize a written fee agreement[.]

II. Whether [the trial] court erred by awarding [High Swartz] damages under a contract implied-in-fact cause of action[.]

III. Whether the [trial] court erred by permitting [High Swartz] to recover under a *quantum meruit* theory as to two (2) of the five (5) litigation matters without pleading it as a cause of action[.]

IV. Whether the [trial] court erred by awarding *quantum meruit* damages based upon [High Swartz's] unpaid invoices[.]

V. Whether the [trial] court erred by failing to allocate damages attributable to the three (3) clients in the [PLI] litigation, the Pinar litigation[,] and the [IM] litigation[.]

Appellants' Brief at 3 (answers and unnecessary capitalization omitted; re-ordered for ease of disposition).[1]

We set forth our well-settled standard of review.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664-65 (Pa. Super. 2014) (quoting *Wyatt, Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted)).

Appellants first contend that High Swartz's violation of Pennsylvania Rule of Professional Conduct 1.5(b), which governs written fee agreements between attorneys and clients, "precluded recovery to [High Swartz] based

---

[1] High Swartz has not filed a brief on appeal despite having received an extension of time for filing one.

upon its unclean hands resultant from any ethical and fiduciary breach to [Appellants] on each of the [five] litigation matters." Appellants' Brief at 14.

Pennsylvania Rule of Profession Conduct 1.5(b) provides that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation." Pa.R.P.C. 1.5(b).

> [T]he Supreme Court has held that the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings. ***In re Estate of Pedrick***, [] 482 A.2d 215, 217 ([Pa.] 1984). As the Preamble to the Rules state:
>
>> Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process … Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide a structure for regulating conduct though disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, it does not imply that an antagonist in a collateral proceeding or transaction has standing to enforce the Rule. *Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty*.
>
> Pa.R.P.C., Preamble (emphasis added).

***In re Adoption of M.M.H.***, 981 A.2d 261, 272-73 (Pa. Super. 2009).

Based on the foregoing, the law is clear that the Pa.R.P.C. 1.5(b) did not create a basis for the trial court to find that High Swartz was not entitled to payment for work completed on Appellants' behalf. Thus, Appellants are not entitled to relief on their first issue.[2]

Appellants next argue that the trial court's findings of fact and conclusions of law with respect to damages for a contract implied in fact and *quantum meruit* were in error. Those findings are, in relevant part, as follows.

> 8. Although we find that there was no written contract in any of the five litigation matters at issue, High Swartz, through the credible testimony of Mr. Shrimp, put forth evidence to successfully meet its burden of establishing a fee contract implied in fact as to each of the five litigation matters at issue here.
>
> 9. The evidence clearly established that Mr. Bowman repeatedly requested that High Swartz provide legal representation in the various legal matters at issue. We were not convinced by Mr. Bowman's testimony that he personally never agreed to pay for these legal services, which he admittedly solicited. The evidence presented before [the trial court] clearly established that Mr. Bowman did, in fact, avail himself of High Swartz'[s] legal services, and that High Swartz had a reasonable

___

[2] Moreover, the record supports the trial court's finding that Pa.R.P.C. 1.5(b) was inapplicable in this case because Appellants and High Swartz had a longstanding business relationship. Trial Court Opinion, 5/5/2015, at 7 ("[W]hile High Swartz's failure to provide written fee agreements to [Appellants] in the five civil matters may not have been a 'best practice,' it was not so egregious to be characterized as unethical.… Furthermore, a plain reading of Pa.R.P.C. 1.5(b) combined with the recognition of the parties' prior relationship suggests that High Swartz has not even technically violated the rule.").

expectation of being paid by Mr. Bowman, who benefitted from such services.

*** 

16. Here, [] High Swartz has put forth ample evidence to show that it has a valid and enforceable *quantum meruit* claim against [Appellants] USD, Bowman, and [Mr. Rooter].

17. High Swartz has satisfied its burden to demonstrate that [Appellants] passively received a benefit that it would be unconscionable for [them] to retain.

18. Based on all of the facts, we find that Mr. Bowman, USD, and [Mr. Rooter] have been unjustly enriched, and that it would be unconscionable to allow said [Appellants] to retain the benefits provided by High Swartz['s] legal representation without payment for legal services received in the various lawsuits at issue here.

Trial Court Opinion, 9/23/2014, at 12-13 (citations and quotation marks omitted).

Appellants argue that the trial court erred by awarding damages for contract implied in fact to High Swartz for the Pinar and IM litigation matters because High Swartz did not plead specifically that cause of action in its complaint.[3] Appellants' Brief at 18-19.

High Swartz's complaint set forth the following, in relevant part, with respect to the IM and Pinar matters:

---

[3] With respect to the PLI and Allstate matters, High Swartz pled breach of contract, contract implied in fact, *quantum meruit*, and promissory estoppel. With respect to the CII matter, High Swartz pled breach of contract, contract implied in fact, and *quantum meruit*. With respect to the Pinar and IM matter, High Swartz pled only a claim for breach of contract. **See** Third Amended Complaint, 8/21/2012.

- 10 -

36.  By letter dated December 14, 2007, USD and Bowman were fully [apprised] of [High Swartz's] rates and terms of professional service and agreed to pay [High Swartz's] fees [for the Pinar matter].

37.  USD and Bowman have failed to pay [High Swartz] the sum of [$9,118.46]…. USD and Bowman are therefore in breach of their contract with [High Swartz].

47.  USD and Bowman were fully apprised of [High Swartz's] rates and terms of professional service and agreed to pay [High Swartz's] fees, as evidenced, in part, by USD and Bowman's payment of fees related to the [IM] [l]itigation.

48.  USD and Bowman have failed to pay [High Swartz] the sum of [$69,695.36]…. USD and Bowman are therefore in breach of their contract with [High Swartz].

Third Amended Complaint, 8/21/2012, at ¶¶ 36-37, 47-48.

We consider this issue mindful of the following:

In this Commonwealth, the pleadings must define the issues and thus every act or performance essential to that end must be set forth in the complaint. The purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses asserted in the case. This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the causes of action from a pleading of facts which obscurely support the claim.

While it is not necessary that the complaint identify the specific legal theory of the underlying claim, it must apprise the defendant of the claim being asserted and summarize the essential facts to support that claim. If a plaintiff fails to properly plead a separate cause of action, the cause he did not plead is waived.

***Estate of Swift v. Ne. Hosp. of Philadelphia***, 690 A.2d 719, 720 (Pa.

Super. 1997) (internal citations omitted).

- 11 -

The trial court concluded that High Swartz's third amended complaint "clearly placed [Appellants] on notice of [High Swartz's] claims against them by specifying the material facts upon which a viable cause of action for breach of contract implied in fact could reasonably be inferred." Trial Court Opinion, 5/5/2015, at 15.

"A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 484 n.7 (Pa. Super. 1984) (internal quotation marks omitted). "An express contract is formed by either written or verbal communication. The intent of the parties to an implied in fact contract is inferred from their acts in light of the surrounding circumstances." *Id*.

We agree with the trial court that even though High Swartz did not plead the specific breach of contract legal theory, it did "apprise the defendant[s] of the claim[s] being asserted and summarize the essential facts to support that claim." *Estate of Swift*, 690 A.2d at 920. Accordingly, Appellants are not entitled to relief on this basis.

Appellants next argue that the trial court erred by awarding damages for both contract implied in fact and *quantum meruit* as it is legally impossible to do so. Appellants' Brief at 20-21. Appellants go on to argue

that High Swartz is not entitled to *quantum meruit* damages. Appellants'
Brief at 21-24.

The trial court observed that it "only awarded damages to the law firm
once, in the amount of the outstanding unpaid legal fee balances." Trial
Court Opinion, 5/5/2015, at 18. Thus, Appellants' contention that two sets
of damages were awarded is without merit. Moreover, even if the trial court
erred in awarding damages on the basis of a *quantum meruit* theory, it
awarded them properly on the basis of contract implied in fact. Accordingly,
Appellants are not entitled to relief on either issue.[4]

Finally, Appellants argue that the trial court erred by not apportioning
damages between the three entities involved in this case: Mr. Bowman, Mr.
Rooter, and USD. Specifically, Appellants take issue with the following
conclusion.

> 25. Due to the lack of evidence presented which would permit
> the [the trial court] to apportion legal fees among [Appellants]
> named in the PLI, IM, and Pinar litigation matters, we are
> constrained to find each [Appellant] liable for the full amount of
> money due to [High Swartz] in each litigation matter.

Trial Court Opinion, 9/23/2014, at 15.

---

[4] Other than Appellants' argument that the trial court erred in awarding
damages for contract implied in fact when it was not pled in the complaint,
which we discussed *supra*, Appellants set forth no argument that High
Swartz was not entitled to damages for contract implied in fact.

- 13 -

Appellants first argue that this award of damages against Mr. Bowman personally is akin to piercing the corporate veil. Thus, they suggest that Mr. Bowman should not be liable to High Swartz. Appellants' Brief at 24-26.

The trial court offered the following.

> [O]ur decision to hold all three [Appellants], including Mr. Bowman, liable in these matters was based upon the evidence and testimony which revealed that [Appellant] Bowman had been involved in those litigation matters in an individual capacity. Furthermore, we did not hold [Appellant Mr.] Bowman liable for any legal fees stemming from the [CII] and Allstate matters because he was not a named defendant in those matters.

Trial Court Opinion, 5/15/2015, at 22.

This conclusion is supported by the record. The testimony revealed that Mr. Bowman was an individually named defendant in the PLI, IM, and Pinar matters. Accordingly, the trial court did not err in holding him personally liable for the attorneys' fees in those cases. Thus, Appellants are not entitled to relief.

Appellants also argue that because High Swartz failed "to adduce evidence as to the benefit which accrued to each [c]lient respectively, the [trial court] erred by aggregating the damages 'jointly and severally' as to the [clients] collectively." Appellants' Brief at 27.

Appellants misunderstand the law in Pennsylvania with respect to whether joint and several liability is available in contract actions.

Two general authorities on the subject have identified a strong trend in favor of a principle that co-signers or co-obligors on a contract are jointly and severally liable for its performance. ***See*** 2 Samuel Williston, ***Williston on Contracts*** §§ 320, 336, at 649–657, 697–706 (3d ed. 1959) (while at early common law the rule was that co-obligors were jointly liable, the modern trend both in statute and judicial decision is towards implying joint and several liability); Restatement (Second) of Contracts § 289, at 410–11 (1981); ***see also Mamalis v. Atlas Van Lines, Inc.***, [] 528 A.2d 198, 202 ([Pa. Super.] 1987), ***aff'd***, [] 560 A.2d 1380 ([Pa.] 1989). In Pennsylvania, whether liability on a contract is joint or joint and several seems to be treated as a question of construction or interpretation, not as a rule of law. ***See Morrison v. American Sur. Co.***, 224 Pa. 41, 73 A. 10, 11 (1909) ("In all contracts the parties may make their own bargain, and if they do so in *language showing an intention* to impose a several as well as a joint liability upon the obligors, the courts will enforce it against each party as well as against all the parties jointly.") (emphasis added); ***see also Wolgin v. Atlas United Fin. Corp.***, 397 F.Supp. 1003, 1012 (E.D.Pa.1975) ("Under Pennsylvania law, 'the intention of the parties as evidenced by the language employed in the agreement under consideration,' determines the status of the parties.") (citations omitted), ***aff'd***, 530 F.2d 966 (3d Cir.1976).

***Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.***, 11 F.3d 399, 405 (3d Cir. 1993).

Instantly, the evidence is clear that High Swartz was retained to defend all entities who were sued in each action. Accordingly, the trial court did not err by holding the entities jointly and severally liable in these matters.

Based on the foregoing, we conclude that Appellants have offered no basis for disturbing the judgment entered on April 23, 2015.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 5/16/2016