Commonwealth ex rel. Benson et al., Appellants, *v.* Wayne County Child Welfare Service.

Argued March 23, 1962. Before Rhodes, P. J., Er-
vin, Wright, Woodside, Watkins, Montgomery, and
Flood, JJ.

*Milford J. Meyer,* for appellants.

*David M. Boyd,* for appellee.

OPINION BY WOODSIDE, J., June 13, 1962:

This is a habeas corpus case brought by the father and paternal grandmother to obtain custody of three children who were placed in foster homes by the Wayne County Child Welfare Service.

The children were placed in the foster homes approximately three years ago shortly after their parents separated. They had been with their mother and maternal grandparents for a short time prior to their placement, but they were unable to care for them. Apparently, without a hearing or a court order and without serious objection from either parent, the county agency took over custody and has been looking after the welfare of the children. A girl, 4 years of age, is in one foster home and the two boys, 6 and 5, are in another foster home.

Before retiring from the bench, President Judge BODIE heard testimony on the writ now before us, and then, without making any findings or writing an opinion, entered an order dismissing the writ. The petitioners appealed from this order.

The case must be remanded for findings of fact and an opinion. We cannot properly pass upon the case without them. In *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350 (1953), the Supreme Court said that the broad power of appellate review in custody cases "was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge."

. Ordinarily, the court below could make its findings on the basis of testimony already taken, even though the judge who took the testimony is no longer on the bench. However, we think the court below should be permitted, if it so desires, to take additional testimony or even conduct a de novo hearing. It is important in a custody case for the judge to hear and see the witnesses, for as we stated in *Commonwealth ex rel. Shroad v. Smith,* 180 Pa. Superior Ct. 445, 450, 119 A. 2d 620 (1956), a "trial judge, while conducting a hearing which involves the custody of children, is observing every act of the parties, not only to appraise the truth of their testimony, but also to evaluate their fitness to have custody of the children."

This is not the usual custody case where relatives are seeking custody of children from relatives. It is an action brought by relatives against a public agency. As there is frequent evidence of confusion concerning the rules to be applied in actions for custody between relatives and public agencies, we think we should state a few general principles to be applied in such cases.

A court should not take the custody of children from their parents solely on the ground that the state or its agencies can find a better home for them. If "the better home" were the only test, public welfare officials could take children from half of the parents in the state whose homes are considered to be the less desirable and place them in the homes of the other half of the population considered to have the more desirable homes. Upon extending the principle further, we would find that the family believed to have the best home would have the choice of any of our children. Ordinarily, actions to take custody of children from parents or close relatives and to place their custody in a public agency must be brought in the juvenile court, and the transfer of custody must be based upon a finding that the children are neglected, dependent or delin-

quent. See The Juvenile Court Law of June 2, 1933, P. L. 1433, 11 P.S. §243 et seq.

In the case before us, it appears that the parents were unable to properly care for the children when the welfare agency stepped into the picture and placed the children in foster homes. As the placement by the agency was not met with any legal objection from the parents and the case had not previously been in the juvenile court, the proper action was the one which was brought, to wit, a petition filed in the court of common pleas for a writ of habeas corpus. Had the public agency obtained custody by a juvenile court order, the procedure would have been to amend that order.

The father, having acquiesced in the rearing of the children in foster homes, must now present more impelling reasons to obtain custody of his children than would have been required of him to retain custody in the first instance. The court must now consider the effect upon the children of transferring them from the homes of foster parents to whom they have become attached.

Setting forth these principles relating to custody is not to be taken by the court below as any indication of what order we think it should make. Nor should the court limit its findings to the few considerations set forth above. It must give full consideration to all the circumstances, and to all relevant rules of law relating to child custody which are not inconsistent with this opinion.

The order dismissing the writ is set aside and the case remanded for action consistent with this opinion.

WRIGHT, J., concurs in the result.