## Commonwealth ex rel. Martino, Appellant, *v.* Blough.

Argued April 18, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Sanford S. Finder,* for appellant.

*Frank A. Conte,* with him *Michael E. Kusturiss,* for appellee.

OPINION BY WOODSIDE, J., June 13, 1963:

This is an appeal from the refusal of the court below to give a father custody of his young daughter.

The petitioner, John Martino, and the child's mother, who is now deceased, were married September 2, 1957. Two children were born to this marriage—John the older child who is now with his father, and Temera Mae, the subject of this habeas corpus action, who was born June 8, 1959. Three months after Temera Mae was born, her parents separated. On August 10, 1960, the child's mother was killed in a motorcycle accident. In July 1959, the defendants, Robert Blough and his wife, Lillian Blough, who were distantly related to Temera through her maternal grandmother's marriage, began caring for her.

After the death of Temera's mother and after her paternal grandmother returned to Pennsylvania from California, her father attempted to secure custody of her. When custody was refused, the father filed this action on January 11, 1961. At this time Temera was only 19 months old and her mother had been dead only five months.

The court below found that the child was well cared for by the defendants; that its development from a sickly, premature child toward full health was due to the devotion, loving care and excellent attention of the defendants; that they had asked for no support for the child; and that the petitioner was unemployed at the time of the hearing. The court thereupon entered an order on March 9, 1961, awarding custody to the defendants.

The father had become unemployed as a result of the closing of his place of employment because of a

labor dispute only a day before the hearing, and he expected to return to work when the dispute was settled. The petitioner was paying $104 a month to the mother under a support order which included Temera. Both parties live in houses which are adequate in size and facilities to properly care for the child.

Because of the advantages which trial judges have to observe the parties[1] and because of the burden which the law places upon appellants, we are reluctant to reverse the orders of the courts below in custody cases. We are convinced, however, that the record before us requires that we do reverse the court order in this case, and grant custody of this young child to her father.

It is true, as the court below said in citing *Com. ex rel. McKee v. Reitz,* 193 Pa. Superior Ct. 125, 163 A. 2d 908 (1960), that the right of a natural parent is not absolute and must yield to the best interests and welfare of the child. We have emphasized too frequently to require citation that the guiding principle in deciding a custody case is the welfare of the child. We reaffirm that principle. However, without detracting from the virtue of the principle, we must warn that it is not without limitation in its application. If this principle were universally applied, any person who by religion, morals, education, love, understanding, and social and economic status was "better" than the person who had custody of a child could obtain custody of that child by a habeas corpus proceeding, and the "best" person could obtain custody of any of our children. *Com. ex rel. Benson v. Wayne County Child Welfare Service,* 198 Pa. Superior Ct. 329, 332, 181 A. 2d 850 (1962).

There is nothing in this record to indicate that the father is not a proper person to have his child. When

---

[1] See *Com. ex rel. Shroad v. Smith,* 180 Pa. Superior Ct. 445, 450, 119 A. 2d 620 (1956).

he and his wife separated, he permitted his wife to have custody of the infant which, under all the circumstances, was proper. The mother called upon the Bloughs for assistance in looking after the child. This help they magnanimously gave. The child was premature and needed care which the mother, because of her employment and her own poor health, was unable to give to it. We have no doubt that the defendants are good people, and that they have been and would continue to be good foster parents. Whether the child was in the custody of the mother or of the Bloughs between the time it was brought home from the hospital and the time of the mother's death is relatively unimportant. Both the Bloughs and the mother had the child during this period, although it apparently was in the custody of the defendants more frequently than in the custody of the mother. However, the mother apparently took the child overnight regularly when she could arrange to do so.

At the mother's funeral, the petitioner spoke to the Bloughs about Temera's custody. He says that he told the defendants that they could keep her until his mother returned from California, when he expected to take custody of her. The defendants say that all he said was that they should not give the child to any other person. Under both versions, custody of the child was discussed and the father attempted to exercise parental custody rights in her. Later, after the father's parents returned to Pennsylvania, the father attempted to obtain Temera and when the Bloughs indicated an intention to retain custody, he brought this action.

The father has the primary right to the child's custody. *Com. ex rel. Thompson v. Altieri,* 184 Pa. Superior Ct. 431, 434, 135 A. 2d 811 (1957); *Com ex rel. Keer v. Cress,* 194 Pa. Superior Ct. 529, 534, 168 A. 2d 788 (1961). Compelling reasons must appear before a parent will be denied custody of his son. *Com. ex*

*rel. Harry v. Eastridge,* 374 Pa. 172, 175, 97 A. 2d 350 (1953).

The child's older brother is with their father. A brother and sister should be separated only for good reason. *Com. ex rel. Reese v. Mellors,* 152 Pa. Superior Ct. 596, 598, 33 A. 2d 516 (1943).

If this child had spent a number of years with the defendants when the father sought custody, the probabilities are that it would not have been advisable to subject her to a changed environment and to remove her from the home to which she had become accustomed. But Temera was only 19 months old when her father sought custody of her. As Chief Justice MAXEY said in *Com. ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 97, 66 A. 2d 300, 306 (1949) : "A child of two years of age or under will form new attachments quickly if treated kindly by those into whose care it is given. In that respect it resembles a young tree whose roots have not yet taken deep hold in the nourishing earth, but when a child is much beyond the age of two years, it becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury."

This brings us to the tragic effect that judicial delay has had on this case. The court below entered its order March 9, 1961, and the petitioner promptly appealed on April 6, 1961. The case was not brought before us for argument until two years later, on April 18, 1963. The reason, we are told, was because the court below had not filed an opinion. The record contains an explanation for the delay by the trial judge, a respected and experienced jurist. We shall not attempt to fix the responsibility for the delay. Apparently the counsel who seemed more willing to delay than

to seek a speedy disposition and the court below which was busy with trials and other pressing matters contributed to the delay, and probably this Court should have been more insistent upon the necessary steps to bring the matter before us for argument.

Now the child is four years old instead of under two, and the appellees ask us to go outside of the record to find that the paternal grandmother and paternal grandfather have both died since the hearing. If the father was entitled to the child on the record at the time that the order was entered in the court below, it is our duty to reverse that order. The father has already been denied the custody of his child for two years when we think he should have had custody. Through no apparent fault of the petitioner, we are compelled to decide this case on the basis of a status which no longer exists. Since we believe that on the record the father is entitled to the child, we are entering our order accordingly.

The writ of habeas corpus is a high priority writ. Neither the court, nor counsel, nor court reporter should be permitted to delay the prompt, final disposition of custody cases.

Order reversed and custody of Temera Mae Martino is given to her father John Martino.

---

Dissenting Opinion by Ervin, J.:

In this custody case I would affirm upon the opinion of President Judge Carson of the court below. I am convinced that the best welfare of this child would be served by leaving the child where it is and has been since birth. The child is now four years old.

It is true that a natural parent should be favored over an "outsider" in the custody of his or her child. It does appear to me that this father has certainly not

shown any great interest in this child, whereas the defendants, Robert Blough and his wife, Lillian Blough, have. The father and mother were married on September 7, 1957 and were separated in September 1959, after various differences and numerous separations. While the husband lived with his wife for only two years, he presented her with two children whom she supported with her own earnings after the separation and she managed to keep her children with or near to her. She had a support order against him for $104.00 per month.

The child who is the subject of this habeas corpus proceeding was of premature birth and has been nursed by the Bloughs from its unfortunate start in life down to the present time. The child also suffers from a respiratory ailment. The doctor who cared for the child, and who was the family physician, testified that the child had received excellent care in the defendants' home. The child has made splendid progress toward becoming normal. A lot of this progress may be attributed to the loving care and excellent attention administered to her by the Bloughs.

The father has contributed nothing to the Bloughs to help pay for the child's support, care or maintenance. The Bloughs notified him when the child was ill but he never came to see her.

At Christmas in 1961 the Bloughs took the child to the father's home to visit him. It was about 3:00 p.m. but he would not get out of bed to see her.

I am of the firm belief that the able trial judge who heard the witnesses and saw the parties properly decided that the best interest of this child would be served if she were left with the Bloughs to carry on the good work which they have been doing.