332 S.E.2d 632

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES**

**v.**

**LA REA ANN C.L.**

**No. 16645.**

Supreme Court of Appeals of West Virginia.

July 10, 1985.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellant.

Cooper & Martin, George M. Cooper, Sutton, for appellee.

Benjamin Snyder, Clendenin, for intervenors.

McHUGH, Justice:

The appellant, the West Virginia Department of Human Services, appeals from the final order of the trial court, which denied the appellant's petition to approve the appellee's relinquishment of parental rights. The trial court held that, although the minor parent had not been coerced by anyone into signing the relinquishment, she had been "under considerable pressure as a result of the circumstances in which she then found herself," at the time of execution of the relinquishment, and that the appellant had violated its own regulations by not informing her of her right to an attorney before deciding to terminate her parental rights by signing a consent to adopt form. This Court has before it the petition for appeal, all matters of record and the briefs filed by the parties, including the intervenors, who are the child's foster parents in this case.

In the year 1980, the appellee, then a pregnant, unmarried 16-year-old, voluntarily placed herself in the temporary custody

of the West Virginia Department of Human Services in order to receive the proper care that her parents, both of whom had been declared unfit parents by reason of alcoholism, would not be able to provide her.[1] After the baby was born, the appellee placed her child under foster care also, so they could be placed in the same foster home, without accepting financial responsibility for the child.[2]

Throughout the pregnancy and thereafter, the appellee debated placing her child up for adoption, and eventually decided to do so, with the explanation that she wanted to live the life of a normal 16-year-old.[3] Once informed of the ramifications of her actions, although not informed of her right to consult with an attorney before relinquishment, the appellee signed a consent to adopt form.[4] Thereafter, the infant was transferred to the home of the intervenors, the child's foster parents, where the child resided for about four years pending the trial court's decision on whether to approve the relinquishment.

Several days after the appellee executed the consent to adopt form, the appellee's mother contacted the West Virginia Department of Human Services in efforts to revoke the relinquishment. Thereafter, the Department of Human Services petitioned the trial court to approve the relinquishment. Although an evidentiary hearing was held on the relinquishment and the matter was ripe for a decision, the trial court did not rule until after the appellee

herein filed a habeas corpus petition nearly four years later. Arguments on the matter were again heard, and the trial court refused to approve the relinquishment.

The Department of Human Services filed a motion for a new trial and the intervenors filed a motion to reconsider, both of which were denied. The instant case is a consolidation of the matter involving the original petition to approve relinquishment and the habeas corpus proceeding which resulted in a decision by the trial court.

At this point we note the unusual posture in which this case reaches us. The Department of Human Services failed to seek a timely ruling on its petition for approval of the relinquishment. Moreover, the problems could have been avoided by the Department by promptly seeking the approval of the relinquishment by the trial judge in accordance with *Code*, 49–3–1(a). Turning to the appellee, this Court is surprised that she, through counsel, did not at a much earlier date seek a ruling so as to recover possession of her child. Finally, the trial court obviously should have ruled much sooner than it did.

## II

The issue before this Court is whether the trial court correctly refused to approve the relinquishment by the appellee.

The appellant asserts several errors in the trial court's decision. First, it asserts

1. The appellee was in the legal custody of the Commonwealth of Virginia while living with her mother and stepfather, in 1980. On July 25, 1980, the appellee was placed in a foster home. Being approximately seven months pregnant, the appellee moved into a "temporary" foster home for a period of 12 days. Thereafter, she moved into her "permanent" foster home. The appellee remained there until about three weeks after the baby was born.

2. The appellee was also able to return to school, while her "permanent" foster parent cared for her newborn daughter. However, there was testimony that conflict arose between her "permanent" foster parent and the appellee when the appellee was not willing to care for the child while not attending school. In October, 1980, the appellee returned to the home of her "temporary" foster parents at her request.

3. There was testimony that the appellee did not care to take the baby out in public because she felt that her motherhood was a poor reflection on herself. Further, the appellee told the trial court that her boyfriend at that time did not want her to retain parental rights to the infant.

4. In October, 1980, the appellee failed to return to her foster home and instead spent the night at her boyfriend's trailer. One of her foster parents and a social worker with the Department of Human Services went to the trailer and took her from there to the office of the Department of Human Services. That day she signed the consent to adopt form.

We note that the putative father of the child was duly notified of the relinquishment hearing. *See W.Va.Code*, 49–3–1(b) [1977, 1984]; *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

that the trial court erred in concluding that the appellee had the right to revoke her relinquishment as a result of personal misgivings at the time of the hearing on the petition to approve the relinquishment.

The appellant also asserts that the trial court erred by not concluding that the best interests of the child require that the child be left in the care of the intervenors, her foster parents, with whom the infant has been living for almost all of her life. The appellant argues that moving the child to the home of the appellee, her natural mother, with whom she has not lived since she was two-months old, would interfere with the child's emotional well-being and development.[5] For the reasons stated below, we hold that the ruling of the trial court was not proper and remand this matter for further consideration.

### III

■ The statutes of this State and the opinions of this Court have traditionally protected the parent-child relationship. For example, this Court, in *In Re Willis*, 157 W.Va. 225, 237, 207 S.E.2d 129, 136 (1973), stated that "no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person." Generally, in the absence of neglect or abuse, parents will retain custody and control over their children.

■ However, in the event that parents no longer wish to retain custody over their children, statutory law allows for a permanent relinquishment of parental rights. This relinquishment of child custody by adult parents and by minor parents to an individual or individuals is generally not revocable. *W.Va.Code*, 48–4–1a [1965], effective at all relevant times herein (now see *W.Va.Code*, 48–4–3 to –5 [1984]), states, in pertinent part: "[E]xcept where a court of competent jurisdiction finds that such consent or relinquishment of legal custody for adoption was obtained by fraud or duress, no consent or relinquishment of legal custody for adoption of a child, whether given by an adult or a minor, shall be revocable[.]" Read alone, this language would indicate that the appellee, the natural mother, would have no right to revoke relinquishment of parental rights in the absence of fraud or duress. As indicated above, this is precisely the argument asserted by the appellant in this case.

The appellant directs our attention to this Court's opinion in *Lane v. Pippin*, 110 W.Va. 357, 158 S.E. 673 (1931), the syllabus of which is quoted in syl. pt. 1, *In re Adoption of Truslow*, 167 W.Va. 696, 280 S.E.2d 312 (1981), as follows:

"An adoption of a child should not be revoked merely because the natural parent or parents, who formally consented to the adoption, subsequently experience a change of mind on the subject. In the absence of fraud in the adoption proceedings or a showing that the best interests of the child would be served by annulling the adoption, the court should refuse to disturb the same."

■ *Lane v. Pippin* and *Truslow* are not controlling in this case. In the instant case, the natural mother is a minor parent, unlike the parents in *Lane v. Pippin* and *Truslow*, and the relinquishment here was to the Department of Human Services, not to an individual or individuals. *W.Va. Code*, 48–4–1a [1965] imposes an additional requirement before a relinquishment of

---

5. The appellant also claims the trial court erred by concluding that the appellee's relinquishment should not be approved because the appellee was not informed of her right to counsel before deciding to relinquish her child. Section 15210(C) of the Social Services Manual utilized by the West Virginia Department of Human Services states the following:

When the worker feels that a termination of parental rights is in the child's best interests, but the parent cannot reach a decision to relinquish voluntarily, the worker should discuss with the parents his plan to approach the court to seek guardianship and his reasons for taking this step. The parent should understand his legal rights and should be encouraged to seek legal counsel to represent him. Instead of focusing on the earlier apparent noncompliance with this regulation, the trial court should have inquired into the factors, such as the best interests of the child, which would have informed the trial court of the material facts existing at the time of its decision nearly four years later.

child custody by a minor parent to a licensed private child welfare agency or to the Department of Human Services will become final. This section contains this proviso: "[A] relinquishment of legal custody for adoption of a child given by a minor parent or parents to a licensed private child welfare agency or to the state department of welfare [now Department of Human Services] shall be revocable unless the relinquishment was given in compliance with [*W.Va.Code*, 49–3–1.]" Significantly, *W.Va.Code*, 49–3–1(a) [1977, 1984], provides, in pertinent part:

> [I]f either of the parents of such child is under eighteen years of age, such relinquishment shall not be valid unless and until the same shall have been approved in writing by a judge of a court having jurisdiction of adoption proceedings in the county in which such parent may reside or in which such relinquishment is made.

We believe the effect of this provision and of the proviso to *W.Va.Code*, 48–4–1a [1965] (now *W.Va.Code*, 48–4–5(a) [1984]) is, ordinarily, to make revocable any relinquishment of child custody by a minor parent to a licensed private child welfare agency or to the West Virginia Department of Human Services which has not yet been approved by a court of competent jurisdiction. Therefore, the trial court was correct in concluding that a minor parent normally has the unfettered rights to revoke his or her relinquishment to such agencies before it is approved by a circuit court. Normally, it is only after a relinquishment of child custody by a minor parent to such agencies is approved by a circuit court that *W.Va. Code*, 48–4–1a [1965] (now *Code*, 48–4–5(a) [1984]) will ordinarily bar revocation of the relinquishment.

The appellant also maintains, however, that the trial court erred in not granting custody to the intervening foster parents because removing the child from their home was against the child's best interests.

The best interest standard is a widely accepted method of determining custody in this country. In *In re Baby Boy Reyna*, 55 Cal.App.3d 288, 126 Cal.Rptr. 138 (1976), a California court refused to return an illegitimate infant to its natural father, when to do so would remove him from his "preadoptive" home, where the child lived for five years. Although acknowledging a strong preference for a parent over a nonparent, the court stated, in part, that, "if the award of custody to a parent as against the claim of a nonparent would be harmful to the child, custody must be awarded to the nonparent." 55 Cal.App.3d at 301, 126 Cal.Rptr. at 147.

"Harm" was described in *Reyna* to include, "uproot[ing] the child from the care and love of the nonparents with whom it has been living for a substantial period of time and plac[ing] it with the father with whom it has never had contact." 55 Cal. App.3d at 302, 126 Cal.Rptr. at 147.

Massachusetts courts have also adopted the best interest approach in child relinquishment cases. In *Revocation of Appointment of a Guardian*, 360 Mass. 81, 271 N.E.2d 621 (1971), the court did not permit the return of an infant to his natural mother where the mother had not read the relinquishment form which she signed after it had been explained to her. The court expressed an interest in protecting the state adoption system and stated that the "system obviously could be greatly injured if prospective adoptive parents could not rely on the availability of children placed in their custody[.]" 360 Mass. at 85, 271 N.E.2d at 624.

Further, the Massachusetts court held that the predominant consideration in such cases was always the welfare of the child, and that where an infant had been in the home of prospective adoptive parents for a substantial period of time, in that case a year and a half, that "[h]is environment and sense of security should not be disturbed without a clear showing of significant benefit to him." 360 Mass. at 89, 271 N.E.2d at 625.

■ This Court has not been confronted previously with a case involving relinquishment of child custody by a minor parent to a licensed private child welfare agency or to the West Virginia Department of Human Services which had not been ruled

upon by the trial court within a reasonable time and, thus, we have never been presented with the question of whether the best interest standard should be applied to these circumstances. We believe, under the circumstances of this case, where the child has spent a substantial period of time in the home of foster parents, pending a ruling by the trial court on whether to approve a minor parent's relinquishment of child custody, extraordinary circumstances exist which demand that the best interests of the child not only be considered but be given primary importance. In such a case the minor parent's right to revoke his or her relinquishment ceases to be absolute, due to the passage of the unreasonable period of time.

In *Commonwealth ex rel. Martino v. Blough*, 201 Pa.Super. 346, 191 A.2d 918 (1963), the court in a child custody case considered the "tragic effect that judicial delay has had on this case." 201 Pa.Super. at 351, 191 A.2d at 920. A delay of about two years in *Martino* was attributable to several persons, namely, the trial court reporter, trial counsel, and the trial court. The appellate court in *Martino* refused "to go outside of the record" (201 Pa.Super. at 352, 191 A.2d at 920) to examine the current status of the relationships between the then four-year-old child and her natural father and between the child and her foster parents (the natural mother had died when the child was about 14-months old). The court felt "compelled to decide this case on the basis of a status which no longer exists" (*id.*) due to the two-year judicial delay. We, on the other hand, believe that the appropriate procedure is to remand for development of a record on the existing state of facts, rather than making a decision on a "stale" record.

*Martino* also discusses the best interest of the child in the context of a changed environment:

If this child had spent a number of years with the [foster parents] when the father sought custody, the probabilities

are that it would not have been advisable to subject her to a changed environment and to remove her from the home to which she had become accustomed. But [the child] was only 19 months old when her father sought custody of her. ... "A child of two years of age or under will form new attachments quickly if treated kindly by those into whose care it is given. In that respect it resembles a young tree whose roots have not yet taken deep hold in the nourishing earth, but when a child is much beyond the age of two years, it becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it. Its bonds of affection have become so strong that to surrender them suddenly may result not only in the child's unhappiness, but also in its physical injury."

201 Pa.Super. at 351, 191 A.2d at 920.

Similarly, in this case, by the time the trial court was ruling on the appellee's relinquishment, the child "had spent a number of years" with the foster parents/intervenors, and was over four years of age. Consequently, her "bonds of affection [for her foster parents may] have become so strong that to surrender them suddenly may result not only in the child's unhappiness, but also in [her] physical injury." *Id.* The trial court did not, however, consider this extremely important factor. It should do so on remand.

Further, we emphasize that *W.Va.Code,* 49–3–1(a) [1977, 1984] requires relinquishments by minor parents to a licensed private child welfare agency or to the Department of Human Services to be approved by a judge of competent jurisdiction before the action becomes valid and final. The statute we believe entrusts to the court, as a very important factor in determining whether to approve the relinquishment, the determination of the best interests of the child involved. This is especially important when there is a substantial delay in the trial court's ruling on the relinquishment.[6]

---

**6.** For example, while *Ohio Rev.Code Ann.* § 5103.16 (Page 1979) and *Va.Code* § 63.1–204 (1985) do not require court approval of a minor

parent's relinquishment of parental rights to an agency, *W.Va.Code,* 49–3–1(a) has done so since 1945, thus enabling a judge to consider not only

While this Court heretofore has not specifically applied the best interest standard to relinquishment approval cases, a very close analogy may be drawn from this Court's treatment of child custody situations. We have repeatedly held that in contests involving the custody of infants the welfare of the child is of paramount and controlling importance and is the "polar star" by which the discretion of the court will be guided. Specifically, we stated in syl. pt. 4 of *State ex rel. Harmon v. Utterback,* 144 W.Va. 419, 108 S.E.2d 521 (1959):

> When a parent, by agreement or otherwise, has transferred, relinquished or surrendered the custody of his or her child to a third person and subsequently demands the return of the child, the action of the court in determining whether the custody of the child shall remain in such third person or whether the child shall be returned to its parent depends upon which course will promote the welfare and best interests of the child; and the parent will not be permitted to reclaim the custody of the child unless the parent shows that such change of custody will materially promote the moral and physical welfare of the child.

However, this Court placed a limitation on this ruling in later cases. In *Hammack v. Wise,* 158 W.Va. 343, 211 S.E.2d 118 (1975), we acknowledged our adherence to the "polar star" concept, but stated that the concept will not be invoked to deprive an "unoffending parent" of his or her natural right to the custody of a child. We applied the standard of the "unoffending parent" in *Ford v. Ford,* 172 W.Va. 25, 303 S.E.2d 253 (1983), and held that a natural mother who left her child in the care of its grandparents under an apparent agreement that the arrangement would be temporary was an "unoffending parent," not having led the caretakers to believe that they might have permanent custody of the infant. Therefore, this Court affirmed the

trial court's ruling to return the infant to the natural mother, even in the absence of evidence that to do so would be in the best interests of the child. Specifically, this Court stated:

> Our decision is based on this well-established principle of law [that the natural parent's right to custody of his or her child is paramount to that of any third party]. In this case the record contains no evidence that the appellee intended permanently to abandon or relinquish her rights to Michelle when she left the appellants' home. . . . There was no agreement between the parties, either oral or written, that Michelle would be remaining with her grandparents permanently.

172 W.Va. at 27, 303 S.E.2d at 255. On the basis of this finding, coupled with the fact that there was no evidence that the natural mother was an unfit parent, this Court held that the mother was an "unoffending parent" entitled to custody of her child, regardless of whether the child's best interests would be better promoted by continuing to live with her grandparents.

■ In the case before us, while counsel for the appellant Department of Human Services suggested that the "meaningful relationship" existing between the child and the intervening foster parents should be taken into consideration, the trial court made no finding on the best interests of the child. In *In Re DiMatteo,* 62 N.C.App. 571, 303 S.E.2d 84 (1983), the Court of Appeals of North Carolina refused to uphold the trial court's decision to return a child to the home of his father without making a finding on the best interests of the child. Instead, the court remanded the case to the trial court with instructions to make a finding on the best interests of the child. We agree with that court's holding that no determination of the child's custody should be made without first giving primary consideration to the child's best interests, with some consideration also given to the interests and the fitness of the natural

the natural parents' interests but the best interests of the child before approving the relinquishment.

and foster parents.[7]

Therefore, we remand this case to the trial court with instructions to receive evidence and to make a finding of fact on the child's best interests presently. We emphasize that the appellee clearly did not intend to leave the child with the Department of Human Services for a temporary time, but, rather, executed a permanent relinquishment form. Although she protested the termination of her parental rights at the subsequent relinquishment hearing, it may be relevant that the appellee waited about three years to file a habeas corpus petition to obtain a decision on the issue of the infant's custody and, thus, permitted the arrangement with the foster parents to continue for several years. However, we make no decision at this time on that issue, instead leaving it also to the trial court.

Upon all of the above, the final order of the trial court is reversed, and this matter is remanded for further proceedings consistent herewith, including an order by the trial court ruling on the relinquishment within 60 days after its receipt of this opinion.[8]

Reversed and remanded with directions.

---

**7.** In this regard, we note that the record before this Court indicates that the appellee is now married, has another child and is apparently much more mature than she was at the time she executed the relinquishment form.

**8.** The trial court's delay in ruling in this case was longer than the period of 33 months in *State ex rel. Patterson v. Aldredge,* 173 W.Va. 446, 317 S.E.2d 805 (1984). In syl. pt. 1 of that case we held:

Under article III, § 17 of the West Virginia Constitution, which provides that "justice shall be administered without sale, denial or delay," and under Canon 3A(5) of the West Virginia Judicial Code of Ethics (1982 Replacement Vol.), which provides that "A judge should dispose promptly of the business of the court," judges have an affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission.

*See also State ex rel. Taylor v. MacQueen,* 174 W.Va. 77, 322 S.E.2d 709 (1984) (two-year judicial delay). Child custody cases certainly should be decided promptly. Regardless of who is responsible for the delay in this case, the child is the unfortunate victim.